T.C. Memo. 2005-121


UNITED STATES TAX COURT


EUGENE MCCLELLAND AND IONE MCCLELLAND, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 1327-02, 1129-03.     Filed May 24, 2005.


<u>Paul V. Sween</u>, for petitioner Eugene McClelland.

<u>William A. Vincent</u>, for petitioner Ione McClelland.

<u>Blaine Holiday</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  By separate notices of deficiency, respondent determined deficiencies in petitioners' Federal income tax of $345,037 for the tax year 1997 and $97,037 for the tax year 1998. Petitioners timely petitioned the Court for redetermination of respondent's determinations in both notices, and the cases were

consolidated. In a stipulation of settlement, the parties agreed to deficiencies of $265,255 for 1997 and zero for 1998. The sole remaining issue in this case is whether petitioner Ione McClelland (Ms. McClelland) is entitled to relief from joint and several liability pursuant to section 6015(b)[1] or, in the alternative, under section 6015(f). Respondent concedes this issue, but petitioner Eugene McClelland (Mr. McClelland) opposes such relief. As explained herein, we find Ms. McClelland is entitled to relief under section 6015(b).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. During the tax years in issue, petitioners resided in Red Wing, Minnesota.

Ms. McClelland's General Background

Ms. McClelland was born on May 15, 1940, and graduated from high school in May 1958. Ms. McClelland married Mr. McClelland on February 14, 1959.

In the summer of 1959, Ms. McClelland was trained as a flight attendant. However, during 1959 and early 1960, she worked as a waitress. From sometime in 1960 until 1967, she

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

worked as an electroencephalograph technician at the Rochester State Hospital in Rochester, Minnesota. She subsequently obtained a job with International Business Machines in its manufacturing department, but the record does not indicate how long she held the job. From 1987 until 1994, Ms. McClelland taught a part-time physical fitness program at St. John's Hospital in Red Wing, Minnesota. However, the majority of Ms. McClelland's time was dedicated to managing petitioners' home, which included growing and canning produce for the McClelland family and raising their children.

Red Wing River Towing, Inc.

Red Wing River Towing, Inc. (Red Wing), was a tugboat towing service corporation. Red Wing elected to be taxed as an S corporation on November 1, 1995. Red Wing was taxed as an S corporation for the years in issue, with a fiscal tax year ending on October 31. The Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc., attached to Red Wing's Form 1120S, U.S. Income Tax Return for an S Corporation, for its fiscal tax year ended October 31, 1997, identified Mr. McClelland as a 50-percent shareholder and Ms. McClelland as a 50-percent shareholder. Both Mr. McClelland and Ms. McClelland were officers of Red Wing during the years in issue. Specifically, Mr. McClelland was its president, and Ms. McClelland was its secretary.

During its fiscal tax year ended October 31, 1997, Red Wing sold a tugboat for $1.5 million. This sale was reported on Form 4797, Sale of Business Property, attached to its Form 1120S for that year. Red Wing also claimed a $701,410 interest paid deduction on that return. The parties agreed that the $701,410 interest paid deduction was improper, and Red Wing did not pay any of the claimed deduction during its fiscal tax year ended October 31, 1997.

Notices of Deficiency and Procedural Background

Respondent issued separate notices of deficiency to petitioners on August 8, 2001, with regard to their 1997 joint Federal income tax return, and on October 23, 2002, with regard to their 1998 joint Federal income tax return. In their timely joint petitions, petitioners asserted that Ms. McClelland was entitled to innocent spouse relief under section 6015(b), or in the alternative, under section 6015(f).

On April 21, 2003, Ms. McClelland had Mr. McClelland served with a Petition for Dissolution of Marriage. In Minnesota, the term "dissolution" is synonymous with "divorce". Minn. Stat. Ann. sec. 518.002 (West 2003). The record does not reflect that the dissolution of marriage was finalized by the date of trial. Ms. McClelland retained separate counsel in this case after she served Mr. McClelland with a Petition for Dissolution of

Marriage. After Ms. McClelland retained separate counsel, she submitted Form 12510, Questionnaire for Requesting Spouse.

OPINION

Married taxpayers may make a single return of Federal income taxes (a joint return). Sec. 6013(a). Generally, section 6013(d)(3) provides that taxpayers making a joint return are jointly and severally liable for the amount of tax shown on the return or found to be owing. However, under certain circumstances a spouse who made a joint return may seek relief under section 6015 from joint and several liability. Section 6015 applies to any liability for tax arising after July 22, 1998, and to any liability, as is the case here, arising before July 22, 1998, but remaining unpaid as of that date. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 740. Section 6015 offers three alternatives to a joint filer seeking relief: (1) Full or partial relief under section 6015(b); (2) proportionate relief under section 6015(c); and (3) equitable relief under section 6015(f). Here, Ms. McClelland seeks relief from joint and several liability under section 6015(b), or in the alternative, section 6015(f) for the 1997 tax deficiency. Mr. McClelland opposes Ms. McClelland's request for innocent spouse relief.

Before we can address Ms. McClelland's claim for innocent spouse relief, we shall discuss: (1) Whether this Court has

jurisdiction to hear Ms. McClelland's request; and (2) who has the burden of proof.

A.   Jurisdiction

The Tax Court is a court of limited jurisdiction, and has been granted by Congress three jurisdictional bases to review a claim for relief from joint and several liability.  See Naftel v. Commissioner, 85 T.C. 527, 529 (1985).  First, we have jurisdiction where a taxpayer petitioned this Court for redetermination of a deficiency under section 6213 and claimed innocent spouse relief under section 6015 as an affirmative defense.  Id. at 533; see King v. Commissioner, 115 T.C. 118, 121-122 (2000); Corson v. Commissioner, 114 T.C. 354, 363-364 (2000); Butler v. Commissioner, 114 T.C. 276, 287-289 (2000).  Second, under section 6015(e), we have jurisdiction to review a taxpayer's petition (a "stand alone" matter) that seeks relief from joint and several liability where the Secretary denied the taxpayer's claim for relief in a notice of final determination, or where the Secretary failed to rule within 6 months of the taxpayer's claim being filed.  Third, a taxpayer may request relief from joint and several liability on a joint return in her petition for review of a lien or levy action.  Secs. 6320(c), 6330(c)(2)(A)(i); King v. Commissioner, supra at 122.

In this case, our jurisdiction to review Ms. McClelland's contention that she is an innocent spouse is conferred by

petitioners' timely joint petitions for redetermination of their deficiencies for 1997 and 1998.  Mr. McClelland's ability to challenge Ms. McClelland's assertion of innocent spouse relief is likewise provided by this case's status as a deficiency proceeding.  See Corson v. Commissioner, supra at 365.

B.  Burden of Proof

The taxpayer generally bears the burden of proof with certain exceptions.  Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004); Jonson v. Commissioner, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); Baumann v. Commissioner, T.C. Memo. 2005-31. Rule 142 presumes that the taxpayer and the Commissioner are adversaries.  See, e.g., Funk v. Commissioner, 123 T.C. 213, 216 (2004); Barnes v. Commissioner, T.C. Memo. 2004-266.  Here, Mr. McClelland, instead of the Commissioner, is opposing Ms. McClelland's claim for innocent spouse relief.[2]  Additionally, Ms. McClelland argues that Mr. McClelland's opposition to her request for innocent spouse relief is a new matter because he signed the joint petitions in which it was asserted that she was an innocent spouse as an affirmative defense and he did not timely inform Ms. McClelland before trial that he intended to oppose her request.  See Rule 142(a).  We believe that a taxpayer

_____

[2]Sec. 7491(a) is not applicable here because it is only relevant in deciding whether the burden of proof shifts to the respondent.

seeking innocent spouse relief should generally bear the burden of proving entitlement thereto. However, as discussed in greater detail _infra_, the burden of proof issue does not influence the outcome of this case because our decision is based on the preponderance of the evidence. See <u>Blodgett v. Commissioner</u>, 394 F.3d 1030, 1035 (8th Cir. 2005), affg. T.C. Memo. 2003-212.

C. <u>Ms. McClelland's Claim for Innocent Spouse Relief</u>

As previously stated, it is agreed that the deficiencies in this case arose from an incorrect interest paid deduction taken by Red Wing on its Federal income tax return for its fiscal tax year ended October 31, 1997. Under section 1366(a), a shareholder's pro rata share of an S corporation's tax attributes is included in the shareholder's tax year in which the taxable year of the S corporation ends. In this case, petitioners' 1997 joint return reflected the improper interest paid deduction because Red Wing claimed the deduction for its fiscal tax year ended October 31, 1997.

Although petitioners petitioned this Court with respect to respondent's determinations for their 1997 and 1998 tax years, the parties have stipulated that petitioners did not have a deficiency in tax for 1998.

1. <u>Section 6015(b)</u>

A relief-seeking spouse qualifies for innocent spouse relief under section 6015(b)(1) if:

(A)  a joint return has been made for a taxable year;

(B)  on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C)  the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D)  taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E)  the other individual elects * * * the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election * * *.

Because these requirements are stated in the conjunctive, a requesting spouse must satisfy each requirement to be relieved of joint and several liability under section 6015(b).  Alt v. Commissioner, supra at 313.  It is agreed that Ms. McClelland met three of the five requirements:  section 6015(b)(1)(A), (B), and (E).  Thus, we shall only address the requirements in section 6015(b)(1)(C) and (D).[3]

---

[3] The Treasury regulations under sec. 6015 do not apply to the 1997 tax liability in this case because Ms. McClelland's claim for innocent spouse relief was filed before the regulations' effective date.  Sec. 1.6015-9, Income Tax Regs.

### a. Section 6015(b)(1)(C): Know or Reason To Know

A spouse seeking relief under section 6015(b) must not have known or had a reason to know at the time of signing a joint return that there was an understatement of tax on the return. Sec. 6015(b)(1). The general rule in an omission of income case is the relief-seeking spouse knew or had reason to know of an understatement of tax if she knew of the transaction that gave rise to the understatement. Erdahl v. Commissioner, 930 F.2d 585, 589 (8th Cir. 1991), revg. and remanding T.C. Memo. 1990-101; Jonson v. Commissioner, supra at 115. However, in deduction cases, the Court of Appeals for the Eighth Circuit has adopted a different standard, following Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989), revg. an Oral Opinion of this Court. Erdahl v. Commissioner, supra at 589.

Under this standard, a spouse has reason to know if "'a reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted.'" Id. at 590 (quoting Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989)). The more the relief-seeking spouse knows about a transaction, "'the more likely it is that she will know or have reason to know that the deduction arising from that transaction may not be valid.'" Id. at 598 n.6 (quoting Price v. Commissioner, supra at 963 n.9).

The duty to inquire may arise when the relief-seeking spouse has notice that a particular deduction could result in a substantial understatement. Id. The failure to inquire may result in the constructive knowledge of the understatement. But, had the relief-seeking spouse inquired about the underlying transaction and been assured of its legitimacy, she need not repeat her inquiry unless the return clearly has red flags. Id. at 590 n.7. The factors considered in deciding whether the relief-seeking spouse had a reason to know or a duty to inquire are: "'the spouse's level of education, [her] involvement in family financial affairs, the evasiveness or deceit of the culpable spouse, and any unusual or lavish expenditures inconsistent with the family's ordinary standard of living.'" Id. at 591 (quoting Guth v. Commissioner, 897 F.2d 441, 444 (9th Cir. 1990)).

### i.    Level of Education

Ms. McClelland graduated from high school in 1958. In 1959 she was trained as a flight attendant. She did not receive any additional formal education.

### ii.   Involvement in Family Financial Affairs

Ms. McClelland's involvement in petitioners' family's financial affairs was limited. Having heard the testimony, we believe Mr. McClelland wrote all checks paying their household bills, and petitioners did not have a joint bank account during the years in issue. Before each time Ms. McClelland shopped for

groceries, Mr. McClelland would sign a check with his name, and she would fill out the amount paid.

With respect to petitioners' 1997 return and Red Wing's Federal income tax return for its fiscal tax year ended October 31, 1997, Mr. McClelland kept and provided all financial records and other information to Gary Kramer (Mr. Kramer), petitioners' accountant. Mr. Kramer completed petitioners' joint 1997 Federal income tax returns for the year in issue, as well as Red Wing's Federal income tax return for its fiscal tax year ended October 31, 1997. Ms. McClelland did not review or sign Red Wing's Federal income tax return for its fiscal tax year ended October 31, 1997, the only place the incorrect interest deduction appeared.

Ms. McClelland's limited involvement in Red Wing's financial affairs included maintaining records that related to the number of hours its employees worked and signing employee payroll checks. Ms. McClelland provided this information to Mr. Kramer, who used this information to calculate the withholding amounts Red Wing needed to pay for various purposes. Mr. Kramer instructed Ms. McClelland to write checks, each in a specific amount for Red Wing's withholding obligations. Ms. McClelland wrote checks in the instructed amounts and signed Mr. McClelland's name.

### iii. <u>Culpable Spouse's Evasiveness and Deceit</u>

Mr. McClelland testified that he was responsible for the improper interest paid deduction, which ultimately led to the deficiency in petitioner's 1997 tax liability. Even though Mr. McClelland knew the claimed interest payment was never going to be made, he entered it into Red Wing's check registry since Mr. Kramer used that information to complete Red Wing's Federal income tax return. This is how the incorrect interest payment in Red Wing's check registry was reported on Red Wing's tax return for its fiscal tax year ended October 31, 1997. These circumstances support a conclusion that Mr. McClelland was the evasive and deceptive taxpayer in this case.

This conclusion is further bolstered by Ms. McClelland's credible testimony that Mr. McClelland did not want her to have access to financial information. Mr. McClelland's control over Red Wing's and petitioners' financial affairs allowed Red Wing, through Mr. McClelland's actions, to report the improper interest paid deduction on its tax return.

Mr. McClelland argues that, as Red Wing's secretary, Ms. McClelland could be expected to be familiar with the various corporate resolutions and documents submitted into evidence at trial. However, Ms. McClelland's credible testimony that Mr. McClelland never explained to her the numerous documents he requested her to sign, nor provided her the opportunity to review

these forms, convinces us that she was unaware of the details of Red Wing's corporate business.

### iv. Unusual or Lavish Expenditures Inconsistent With The Family's Ordinary Standard of Living

In this case, a portion of the tax savings caused by the incorrect interest paid deduction was used to purchase rental property.  Mr. McClelland gave Ms. McClelland a portion of the after tax rental income, and she deposited it into her personal account with Edward Jones.  Ms. McClelland testified that the rental income she received was to compensate her for past services she had performed for Red Wing because Mr. McClelland did not allow her to cash her paychecks from Red Wing, and he had disposed of the paychecks issued to her.  Mr. McClelland failed to offer any evidence to the contrary.  Moreover, the majority of the funds in Ms. McClelland's personal account were from gifts and an inheritance she received from her father.

Ms. McClelland also testified credibly that her family lived a fairly modest lifestyle, and the record contains no evidence that petitioners changed their lifestyle as a result of the incorrect deduction.

### v. Conclusion

Taking all the facts and circumstances into consideration, we hold that Ms. McClelland did not have actual knowledge of the false interest deduction.

Given this holding, we must decide whether a reasonably prudent taxpayer, in Ms. McClelland's position, had a reason to know that the deduction was false or had a duty to inquire about this deduction. Ms. McClelland was a shareholder and officer of Red Wing, and she knew that Red Wing was selling a tugboat, but the record does not support a conclusion that she had any reason to know that Red Wing took an improper interest paid deduction. Ms. McClelland's involvement with Red Wing's financial affairs was limited, and Mr. McClelland provided all of the financial information to Mr. Kramer for tax purposes. Had Ms. McClelland been provided the opportunity to review Red Wing's Form 1120S for its fiscal tax year ended October 31, 1997, she might have observed the false interest deduction, but she was never provided such opportunity. Accordingly, we hold that Ms. McClelland did not have a reason to know that the interest deduction was false, nor did she have a duty to inquire into the interest paid deduction.

b. Section 6015(b)(1)(D): Inequity

We take into account all the facts and circumstances in deciding whether it is inequitable to hold the relief-seeking spouse liable for a deficiency. Sec. 6015(b)(1)(D). Because this requirement is almost identical to the requirement of former section 6013(e)(1)(D), cases interpreting that section such as Erdahl v. Commissioner, 930 F.2d 585 (8th Cir. 1989), remain

instructive to our analysis.  Butler v. Commissioner, 114 T.C. at 283.  The material factors most often cited and considered are whether there has been a significant benefit to the spouse claiming relief, and whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the other spouse.  Alt v. Commissioner, 119 T.C. at 314; Jonson v. Commissioner, 118 T.C. at 119.  Normal support is not considered a significant benefit.  Jonson v. Commissioner, supra at 119.

Ms. McClelland benefited from the improper interest deduction to a certain extent.  She received rental income from property that was purchased with the proceeds of Red Wing's tugboat sale, and the amount of tax actually owed on that sale was decreased by the improper interest paid deduction.  Any negative inference we may have drawn from this fact is partially mitigated by Ms. McClelland's testimony that the rental income was to compensate her for past services she provided to Red Wing.

Mr. McClelland also asserts that his payment of her medical and credit card bills indicates she significantly benefited from the incorrect deduction.  The record fails to support a conclusion that Ms. McClelland's medical expenses and credit card bills were anything other than normal support.  The record is devoid of credible evidence indicating the amount of these expenditures.

More importantly, we are convinced that Mr. McClelland was responsible for Red Wing's claiming an improper interest paid deduction. It is well settled that a purpose of section 6015 relief "is to protect one spouse from the overreaching or dishonesty of the other." <u>Purcell v. Commissioner</u>, 826 F.2d 470, 475 (6th Cir. 1987), affg. 86 T.C. 228 (1986).

We therefore conclude, by a preponderance of the evidence, that it would be inequitable to hold Ms. McClelland liable for the 1997 deficiency.

D.   <u>Conclusion</u>

Ms. McClelland is entitled to innocent spouse relief under section 6015(b), since the preponderance of the evidence indicates that she satisfied the requirements therein.

We need not rule on Ms. McClelland's alternative claim for innocent spouse relief under section 6015(f) because of our holding that she qualifies for relief under section 6015(b).

To reflect the foregoing and give effect to the parties' stipulation of settlement,

<u>Appropriate decisions will be entered</u>.