T.C. Summary Opinion 2008-92

UNITED STATES TAX COURT

JODENE SEAMONS, Petitioner, AND
JOHN ALAN DAVIS, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18478-06S.                    Filed July 29, 2008.

Jodene Seamons, pro se.

John Alan Davis, pro se.

<u>Heather D. Horton</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,
and this opinion shall not be treated as precedent for any other
case.  Unless otherwise indicated, subsequent section references

are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case arises from petitioner's request for relief from joint and several liability with respect to her tax liability for 2004. Respondent determined that petitioner qualified for relief from joint and several liability under section 6015(b); intervenor disagrees. Thus, the issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(b).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. When petitioner filed her petition, she resided in Arizona.

Intervenor and petitioner married in May 2001. At the time petitioner resided in Phoenix, Arizona, and was employed as a paralegal. Intervenor resided in Kingman, Arizona, and was employed as a college professor.

Around April/May 2003 intervenor was discharged from his professorship. Intervenor received unemployment compensation for about 2-1/2 months until he was hired by a financial services company in July 2003. In November 2003 intervenor sold his mobile home for $19,000, less commissions.

On completion of intervenor's training with the financial services company, the couple moved to Chino Valley, and he opened a branch in Prescott, Arizona. However, intervenor was terminated from the financial services company in February 2004. Around February through April 2004 intervenor applied for and received unemployment compensation from the Arizona Department of Economic Security (department). In April 2004 he obtained new employment and was employed with that company for the remainder of 2004.

Around March 2004 petitioner and intervenor began living separate and apart--petitioner in Phoenix and intervenor in Chino Valley and Seligman, Arizona. The arrangement took a toll on their relationship, and petitioner filed for divorce in October 2004. During their divorce settlement conference in December 2004, the couple agreed to file joint Federal and State income tax returns for 2004. They also agreed that they would provide each other with all necessary documentation for the preparation of the returns, that petitioner would prepare the returns, and that they would share equally in any refunds or hold each other harmless for half of any additional income taxes or "costs".

Intervenor did not disclose at the divorce settlement conference (or at anytime thereafter) that he had received unemployment compensation in 2004. His unemployment compensation

was mailed to his Chino Valley and Seligman residences, while petitioner's mail was addressed to her Phoenix residence.

On or about February 22, 2005, petitioner prepared and filed their joint Form 1040, U.S. Individual Income Tax Return, for 2004. Intervenor did not provide petitioner with a Form 1099-G, Certain Government Payments, showing that he had received unemployment compensation in 2004. Petitioner did not report intervenor's unemployment compensation on the Form 1040; it showed a $1,061 overpayment.

On August 28, 2006, respondent issued a notice of deficiency to petitioner and intervenor. Respondent, from third-party payor records, determined that intervenor had received $2,513 in unemployment compensation in 2004. Respondent determined a $625 deficiency. In response, petitioner filed a timely petition with the Court and a request for relief from joint and several liability with the Internal Revenue Service (IRS). Intervenor filed a Form 12507, Innocent Spouse Statement, with the IRS and a notice of intervention with the Court. Petitioner and respondent agree that petitioner's request for relief from joint and several liability pursuant to section 6015(b) should be granted in full.

Discussion

## I. Burden of Proof

Except as otherwise provided in section 6015, petitioner bears the burden of proof with respect to her entitlement to

relief from joint and several liability.  See Rule 142(a); <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004); <u>McClelland v. Commissioner</u>, T.C. Memo. 2005-121 (and cases cited therein).  But petitioner need only persuade the Court by a preponderance of the evidence.  See <u>Haltom v. Commissioner</u>, T.C. Memo. 2005-209; <u>McClelland v. Commissioner</u>, <u>supra</u>.

II.  <u>Joint and Several Liability and Section 6015 Relief</u>

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayers' aggregate income, and liability for the resulting tax is joint and several.  See also sec. 1.6013-4(b), Income Tax Regs.  But the IRS may relieve a taxpayer from joint and several liability under section 6015 in certain circumstances.  Section 6015(b) provides full or apportioned relief for an understatement of tax if certain criteria are satisfied.  See sec. 6015(b)(1) and (2).

The parties agree that petitioner satisfies the requirements of section 6015(b)(1)(A), (B), and (E).[1]  Intervenor asserts, however, that petitioner knew or had reason to know when she signed the return that there was an understatement of tax, see sec. 6015(b)(1)(C), and taking into account all of the facts and circumstances, it would not be inequitable to hold her liable for

---

[1] Petitioner and respondent agree that petitioner satisfies all five elements of sec. 6015(b)(1)(A)-(E).

the understatement, see sec. 6015(b)(1)(D). Thus, according to intervenor, petitioner is not entitled to relief from joint and several liability.

A. Knowledge or Reason To Know of the Understatement

The parties have stipulated that petitioner did not know that intervenor had applied for and received unemployment compensation in 2004. Intervenor testified that he never advised petitioner that he had applied for or received unemployment compensation in 2004. Additionally, the record contains no evidence establishing that petitioner had actual knowledge that the Form 1040 contained an understatement when she signed it. The Court's analysis, therefore, is governed by whether petitioner had reason to know of the understatement when she signed the Form 1040.

In the Ninth Circuit[2] the requesting spouse has reason to know of an understatement "if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the substantial understatement."[3] Price v. Commissioner, 887 F.2d 959, 965 (9th

---

[2] But for sec. 7463(b), an appeal would lie with the Court of Appeals for the Ninth Circuit. See sec. 7482(b)(1)(A). Therefore, the Court follows the law of that circuit. See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

[3] The Court has employed a similar test: whether a reasonably prudent taxpayer in the requesting spouse's position,
(continued...)

Cir. 1989) (and cases cited thereat), revg. an Oral Opinion of the Court; see also Pietromonaco v. Commissioner, 3 F.3d 1342, 1345 (9th Cir. 1993) (extending the Price test to omission of income cases), revg. T.C. Memo. 1991-361 and T.C. Memo. 1991-472.

With respect to omission of income cases, in determining whether the requesting spouse had reason to know of the understatement when she signed the return, courts also consider whether the requesting spouse was aware of the circumstances of the transactions that gave rise to the understatement, not the tax consequences. Wiksell v. Commissioner, T.C. Memo. 1994-99, revd. on other grounds 90 F.3d 1459 (9th Cir. 1996); Pietromonaco v. Commissioner, T.C. Memo. 1991-361; see also Bokum v. Commissioner, 94 T.C. 126, 145-146 (1990) (a "taxpayer claiming innocent spouse status must establish that he or she is unaware of the circumstances that give rise to * * * [the understatement, not merely the tax consequences]"), affd. 992 F.2d 1132 (11th Cir. 1993); Korchak v. Commissioner, T.C. Memo. 2006-185 (applying the knowledge of the circumstances of the transactions test in the context of a claim for relief under section 6015).

In determining whether the requesting spouse was aware of the circumstances of the transactions that gave rise to the

---

3(...continued)
when the requesting spouse signed the return, could be expected to know that the return contained an understatement or that further investigation was warranted. Haltom v. Commissioner, T.C. Memo. 2005-209 (and cases cited therein).

understatement, the Court of Appeals for the Ninth Circuit examines factors including: (1) The requesting spouse's education level; (2) the requesting spouse's involvement in their business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to their past income levels, standard of living, and spending patterns; and (4) the "culpable" spouse's evasiveness and deceit concerning their finances.[4] Pietromonaco v. Commissioner, 3 F.3d at 1345; Price v. Commissioner, supra at 965.

### 1. Circumstances of the Transaction

Intervenor asserts that petitioner knew that he was unemployed in 2004 (the circumstance of the transaction). Thus, she had a duty to inquire into whether he had received unemployment compensation in 2004. According to intervenor, a reasonable paralegal with "substantial experience in family law * * * would believe that a person with sound mind would apply for and receive unemployment compensation rather than allow the equity in a small personal residence to dissipate entirely."

---

[4] The Court has employed similar factors: (1) The requesting spouse's education level and her business knowledge and experience; (2) the requesting spouse's participation in business affairs or bookkeeping; (3) the nonrequesting spouse's openness about their income and business transactions; (4) the presence of unusual or lavish expenditures; and (5) whether their standard of living improved significantly during the years in issue. Laird v. Commissioner, T.C. Memo. 1994-564.

The Court rejects intervenor's contention that his mere unemployed status and the fact that he was arguably eligible for unemployment compensation are the relevant circumstances of the transaction. The Court finds that the circumstance of the transaction was the department's finding that intervenor was eligible for unemployment benefits pursuant to Arizona law. See Ariz. Rev. Stat. Ann. secs. 23-771, -772, -773 (2004). But for the department's determination that intervenor was eligible for unemployment benefits, he would not have received any benefits-- notwithstanding that he was unemployed and was arguably eligible for such benefits. See Ariz. Rev. Stat. Ann. secs. 23-771 (listing seven qualifying conditions), -773; see also Braden v. Commissioner, T.C. Memo. 2001-69 (the Court examines whether the taxpayer was aware of the "underlying transaction" that produced the omitted income); Cheshire v. Commissioner, 115 T.C. 183 (2000) (the taxpayer knew of the distribution from her spouse's retirement plan and the interest earned on a certain account that produced the omitted income items), affd. 282 F.3d 326 (5th Cir. 2002); Charlton v. Commissioner, 114 T.C. 333 (2000) (the underlying circumstance was the spouse's transcript service that produced the omitted income item).

Moreover, the Court has also determined that taxpayers must have sufficient knowledge of the transaction to permit them to inquire as to its appropriate tax treatment. Braden v.

Commissioner, supra (citing Hillman v. Commissioner, T.C. Memo. 1993-151). Had intervenor provided petitioner with a Form 1099-G or informed her that he had received unemployment benefits, she could have inquired about the appropriate tax treatment of the benefits. The Court is inclined to agree with petitioner that "when you are unemployed you're eligible for lots of things" but that status and the mere fact that someone might be eligible for benefits, by themselves, are not determinative under Arizona law. Without more, such circumstances did not trigger a duty of inquiry on petitioner's behalf.

### 2. The Price Factors Applied

Application of the Price factors to the facts here leads the Court to the conclusion that petitioner had no reason to know of the understatement resulting from intervenor's omission of his unemployment compensation when she signed the return. He received the unemployment compensation when they were living apart, and his unemployment checks were mailed to his separate residences. He did not provide petitioner with a Form 1099-G showing that he had received unemployment compensation in 2004. He also failed to disclose during their divorce settlement conference (or at any other time) that he received unemployment compensation in 2004.

The record also supports a conclusion that petitioner's involvement in their finances was insufficient to put a

reasonable person in her position on notice that the Form 1040 contained an understatement when it was signed. Additionally, there is no evidence that their expenditures were unusual or extravagant or that their overall standard of living significantly improved during 2004 such as to put a reasonably prudent person in petitioner's position on notice when the Form 1040 was signed that intervenor had received and failed to report his unemployment compensation. See <u>Mysse v. Commissioner</u>, 57 T.C. 680, 697-700 (1972); <u>Haltom v. Commissioner</u>, T.C. Memo. 2005-209; <u>Barranco v. Commissioner</u>, T.C. Memo. 2003-18; <u>Laird v. Commissioner</u>, T.C. Memo. 1994-564. On the record their expenditures and standard of living appear to be commensurate with their expenditures and standards of living in prior years. Thus, the circumstances "were [not] so out-of-whack that they should have triggered the duty of inquiry" on petitioner's part. <u>Haltom v. Commissioner</u>, <u>supra</u>; see also <u>Juell v. Commissioner</u>, T.C. Memo. 2007-219; <u>Kling v. Commissioner</u>, T.C. Memo. 2001-78.

The Court rejects intervenor's contention that he did not inform petitioner that he had received unemployment compensation because he did not know that it was taxable.[5] Not only is his knowledge irrelevant, but intervenor, a former college professor

---

[5] The Court notes that Ariz. Rev. Stat. Ann. sec. 23-792 (2004) provides that at the time of filing a claim for unemployment benefits, the individual shall be informed that unemployment benefits are subject to Federal income tax, and he may elect to have the tax withheld.

who taught business classes, worked for a financial services company, and had opened a branch for the company, should have known that his unemployment compensation was taxable.

The Court can examine other factors relevant to the issue before it.  See Pietromonaco v. Commissioner, 3 F.3d at 1345; Price v. Commissioner, 887 F.2d at 965.  Petitioner and intervenor were directed by their divorce decree to file a joint return and to provide all necessary documentation to each other. Respondent contends that a "reasonably prudent person in Petitioner's position [when she signed the return] would believe that the return was correct in order to truly finalize the divorce."  Simply put, the Court agrees, and this factor weighs in petitioner's favor.

Intervenor contends that it was not reasonable for petitioner to believe that he "'had sufficient funds with which to support himself * * * [in 2004 and implicitly give up unemployment compensation since he had relied on unemployment compensation in 2003].'"[6]  Respondent, on the other hand, contends that a "reasonably prudent person in Petitioner's position [when she signed the return] would not [have assumed]

_____

    [6] Petitioner testified that she suggested that intervenor might want to look into unemployment compensation in 2003 in order to meet his child support obligations, but she cannot recall whether he did or whether he had received unemployment compensation in 2003.

that Intervenor had applied for unemployment when Intervenor had money to support himself."

Respondent's argument is persuasive.  Intervenor had sold his mobile home in November 2003 for about $19,000, less commissions, before becoming unemployed in February 2004. Intervenor received $28,326 as compensation for services in 2004.[7]  He was unemployed for less than 3 months, a relatively short period.  Considering that the amounts are comparable, it would be reasonable for a prudent person in petitioner's position when the return was signed to believe that he could have supported himself with the sale proceeds for the short time in which he was diligently searching for employment rather than obtain unemployment compensation.

B.  <u>Inequity of Respondent's Grant of Relief to Petitioner</u>

The two most often cited factors for determining whether it would be inequitable to hold a requesting spouse liable for a deficiency are whether:  (1) The requesting spouse received significant benefit, <u>Pietromonaco v. Commissioner</u>, 3 F.3d at 1347 (and cases cited thereat); and (2) the failure to report the correct tax liability results from the nonrequesting spouse's concealment, overreaching, or other wrongdoing, <u>Alt v. Commissioner</u>, 119 T.C. at 314.

---

[7]  Intervenor received $2,675 for January through February and $25,651 for April through December 2004.

Although the parties have stipulated that petitioner received no benefit from the unemployment compensation, intervenor contends that she received a benefit to the extent that it was used to pay her last month's rent at the "Chino Valley apartment". But normal support is generally not considered a significant benefit. Pietromonaco v. Commissioner, 3 F.3d at 1347 (and cases cited threat). Moreover, the record supports a conclusion that petitioner did not receive any benefit from intervenor's unemployment compensation: he received it after they had started living apart, and she paid most, if not all, of their living expenses during their marriage, while his income was used to satisfy his obligations. As to the second factor, the Court has found that intervenor concealed his receipt of the unemployment compensation.

The Court finds that it would be inequitable to hold petitioner liable for the deficiency attributable to intervenor's omission of his unemployment compensation; therefore, section 6015(b)(1)(D) is satisfied. The Court also finds, by a preponderance of the evidence, that petitioner has satisfied the requirements of section 6015(b)(1) and she is entitled to relief from joint and several liability.

To reflect the foregoing,

Decision will be entered for petitioner.