T.C. Memo. 2015-180

UNITED STATES TAX COURT

WILLIE C. SCOTT AND SANDRA N. SCOTT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1753-14L.                    Filed September 14, 2015.

<u>Michelle T. White</u>, for petitioners.

<u>Adam J. Smith</u> and <u>Lauren B. Epstein</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Petitioners seek review of respondent's determinations to
collect via levy income tax liabilities and additions to tax arising in 2008 and 2009
and to deny Mrs. Scott relief from joint and several liability.  The specific issues
presented are:

**[\*2]** (1) whether the settlement officer abused her discretion by determining that petitioners were not eligible for currently not collectible status but instead qualified for an installment agreement with a $960 monthly payment. We hold that the settlement officer did not; and

(2) whether Mrs. Scott is entitled to relief from joint and several liability for taxable years 2008 and 2009 under section 6015(b).[1] We hold that she is to the extent that the tax deficiencies were not attributable to items reported on her Schedules C, Profit or Loss From Business, and on her Schedules A, Itemized Deductions.

## FINDINGS OF FACT

Petitioners, a married couple, resided together in Florida when the petition was filed.

Mr. Scott has been in charge of household finances in recent years, including taxable years 2008 and 2009. Mr. Scott prepared the joint Federal income tax returns for 2008 and 2009 and submitted them electronically. Mrs. Scott played no role in the returns' preparation except providing Mr. Scott information regarding her two businesses. She holds a bachelor of science degree

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] in accounting from Northern Illinois University and handled the sales and expense data for the two businesses she managed, Mary Kay cosmetics and Direct Sales Waiora, for which she had two separate Schedules C for each year. She was not involved in her husband's business activities.

On their 2008 joint return petitioners claimed a $43,433 refund, which respondent issued on November 9, 2009. On their 2009 return petitioners claimed a $3,650 refund, which respondent issued on November 1, 2010. On May 29, 2012, respondent mailed petitioners a notice of deficiency for taxable years 2008 and 2009. Respondent determined income tax deficiencies and fraud penalties under section 6663 for 2008 and 2009. We note, however, that respondent abated the assessment of the fraud penalties against Mrs. Scott. Petitioners did not file a petition to contest the 2008 and 2009 determinations in the notice of deficiency, and those liabilities are not in dispute in the present case; however, Mrs. Scott's claim for relief from joint and several liability is properly before us on the basis of our jurisdiction to review determinations denying such relief under section 6015(e).

The notice of deficiency indicated several areas where petitioners had failed to establish that expenses reported on the joint returns for the businesses each petitioner operated independently were paid or incurred.

[*4]   The notice of deficiency had the following adjustments to income:

| Adjustments to income | 2008 | 2009 |
|---|---|---|
| Sch C1 - supplies - Mary Kay | $4,108 | $5,755 |
| Sch C1 - interest - other - Mary Kay | 2,938 | 3,404 |
| Sch C1 - car & truck expenses - Mary Kay | (4,469) | 2,411 |
| Sch C4 - taxes & licenses - Gold Importing | 4,251 | 195 |
| Sch C3 - advertising - Waiora | 246,049 | --- |
| Sch C2 - travel - Tree/RE/5Linx | 4,025 | --- |
| Sch C2 - legal & professional - Tree/RE/5Linx | 8,077 | --- |
| Sch C2 - car & truck expenses - Tree/RE/5Linx | 2,846 | --- |
| Sch C3 - gross receipts - Waiora | (73) | --- |
| Sch C2 - gross receipts - Tree/RE/5Linx | (375) | --- |
| Sch C1 - gross receipts - Mary Kay | 10,851 | 15,656 |
| Sch C2 - repairs & maintenance - Tree Farm | 1,047 | --- |
| Sch C1 - CGS - purchases - Mary Kay | 171 | (1,745) |
| SE AGI adjustment | (135) | (807) |
| Itemized deductions | 10,492 | 1,001 |
| Exemptions | 3,501 | 2,920 |
| Sch C1 - utilities - Mary Kay | --- | 976 |
| Sch C1 - rent/lease - other business property - Mary Kay | --- | 4,428 |
| Sch C1 - office expenses - Mary Kay | --- | 3,154 |
| Sch C5 - utilities | --- | 2,011 |
| Sch C5 - car & truck expenses | --- | 1,869 |
| Sch C5 - gross receipts or sales - Ardyss | --- | (138) |
| Sch C1 - other expenses - Mary Kay | --- | 4,936 |

| | | |
|---|---|---|
| [*5] Sch C5 - supplies - Ardyss International | --- | 16,857 |
| Sch C4 - other expenses - Gold Importing | --- | 30,658 |
| Social Security | --- | 10,499 |

The most significant adjustment was $246,049 regarding Mrs. Scott's sole proprietorship Direct Sales Waiora for 2008. For 2008, $255,467 of the $293,304 total positive adjustments to income related to Mrs. Scott's two businesses. For 2009, $33,220 of the $104,040 in total positive adjustments related to her two businesses.

Regarding petitioners' request for currently not collectible status, the settlement officer requested that before November 29, 2013, petitioners submit to her signed copies of their Forms 1040, U.S. Individual Income Tax Return, for tax years 2011 and 2012 and a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with all applicable attachments requested on the form. The settlement officer made clear that she could not consider any collection alternative during the collection due process (CDP) hearing without the requested information.

Petitioners failed to submit the information by that deadline. On December 4, 2013, petitioners left a voice mail requesting to reschedule the conference. The settlement officer complied and rescheduled for December 17, 2013. On

**[\*6]** December 9, 2013, petitioners faxed the settlement officer each spouse's married filing separate individual income tax returns for taxable years 2011 and 2012 and a Form 433-A signed only by Mr. Scott. They provided no other documents. On December 13, 2013, the settlement officer left a voice mail requesting supporting documentation for Form 433-A, but petitioners never submitted any.

For taxable years 2008 and 2009, Mr. Scott had retirement income and operated multiple businesses.

After reviewing the Form 433-A and using the national standards for allowable living expenses, the settlement officer determined that petitioners were not eligible for currently not collectible status and instead indicated that they could pay $960 monthly installments. Respondent therefore issued a determination to proceed with collection. Petitioners then filed a petition with this Court.

OPINION

I. Jurisdiction

Petitioners come before us pursuant to section 6330(d) to appeal the settlement officer's determination. "[J]urisdiction under section 6330(d)(1)(A) is established when there is a written notice that embodies a determination to

**[\*7]** proceed with the collection of the taxes in issue, and a timely filed petition."

Lunsford v. Commissioner, 117 T.C. 159, 164 (2001).

Petitioners received a notice of deficiency for the taxable years 2008 and 2009. The notice of deficiency determined that both petitioners were liable for the deficiencies in income tax and penalties under section 6663. Since petitioners received the notice of deficiency and did not file a petition contesting it, they cannot challenge the tax liabilities in this case but may challenge the settlement officer's exercise of discretion in determining to proceed with collection. Subsequently, Mrs. Scott requested relief from joint and several liability and submitted Form 8857, Request for Innocent Spouse Relief, and respondent rejected her request in the same notice of determination issued regarding the collection action. However, respondent stated in that notice that the denial of relief from joint and several liability was separate from the collection action determination.

## II. CDP Hearings and Standard of Review

If a taxpayer fails to pay any Federal income tax liability after notice and demand, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property. Before proceeding with a levy, the Commissioner must issue a final notice of intent to levy and notify the taxpayer of the right to a hearing.

[*8] Sec. 6330(a) and (b)(1). During the hearing a taxpayer may raise any relevant issue, including challenges to the appropriateness of the collection action and possible collection alternatives. Sec. 6330(c)(2)(A).

Following the hearing, the Appeals Office must determine whether the proposed collection action may proceed. For a notice of intent to levy, the Appeals Office is required to consider: (1) whether the Secretary has met the requirements of applicable law and administrative procedure; (2) the relevant issues raised by the taxpayer; and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns that the collection action be no more intrusive than necessary. Sec. 6330(c)(3). The settlement officer considered each of these requirements and found petitioners' accounts were currently collectible.

Where a taxpayer's underlying tax liability is not in dispute, the Court reviews the Commissioner's determination to proceed with collection for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000).

To establish abuse of discretion, the taxpayer must prove that the decision of the Commissioner was arbitrary, capricious, or without sound basis in fact or in law. Giamelli v. Commissioner, 129 T.C. 107, 111 (2007) (citing Sego v.

**[\*9]** <u>Commissioner</u>, 114 T.C. at 610, and <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999)).  In reviewing for abuse of discretion, we generally consider only the arguments, issues, and other matters that were raised at the hearing or otherwise brought to the attention of the Appeals Office.  <u>Id.</u> at 115.

III.  <u>Whether the Settlement Officer Abused Her Discretion</u>

Petitioners argue that the settlement officer abused her discretion by failing to consider all facts pertaining to petitioners' ability to pay the monthly installment.  The settlement officer gave petitioners multiple opportunities to submit the documents she required to assess the situation.  Petitioners missed the first deadline, November 29, 2013.  The settlement officer rescheduled the original hearing to December 17, 2013, with documents due on December 9, 2013.  On this date petitioners submitted via fax the requested Form 433-A and copies of delinquent returns for tax years 2011 and 2012 but failed to include supporting documentation to substantiate income and expenses.  On December 13, 2013, the settlement officer called petitioners and left a voice mail requesting the supporting documents.  Petitioners again failed to comply.

The settlement officer, through her multiple attempts to obtain documentation, was sufficiently patient.  Petitioners argue that they are not technologically sophisticated, but they sent the requested Form 433-A via fax.

[*10] They could have also sent the supporting documents using fax or informed the settlement officer of the circumstances that prevented them from sending the information. Petitioners never requested additional time to turn in the supplemental documents after turning in the Form 433-A. A settlement officer can take into consideration only the information she is provided. See Boyd v. Commissioner, T.C. Memo. 2013-100 (granting the Commissioner's motion for summary judgment in a CDP case because of, among other things, the taxpayers' failure to timely submit Form 433-A and supporting documents); Winters v. Commissioner, T.C. Memo. 2012-183 (holding that the settlement officer did not abuse her discretion by sustaining the proposed collection action when the taxpayer did not timely submit the requested forms and financial documentation).

Petitioners were given ample opportunity to supply the necessary information, but they did not do so. In addition, their trial testimony did not support their claims of inability to pay and in at least one instance was inconsistent with information they had previously represented to the settlement officer. We therefore conclude that respondent did not abuse his discretion in determining to proceed with collection.

**[*11]** IV.  <u>Relief From Joint and Several Liability Under Section 6015(b)</u>

Generally, married taxpayers who file a joint Federal income tax return are jointly and severally liable for the tax reported or reportable on the return.  Sec. 6013(d)(3).  Section 6015 allows a spouse to obtain relief from joint and several liability in certain circumstances.  Section 6015(a)(1) provides that a spouse who has made a joint return may elect to seek relief from joint and several liability under section 6015(b).

Section 6015(b) provides that a taxpayer will be relieved of liability for an understatement of tax if:  (1) a joint return was filed for the taxable year in question; (2) there is an understatement of tax attributable to erroneous items of the nonrequesting spouse; (3) the taxpayer requesting relief "did not know, and had no reason to know, that there was such understatement" when he or she signed the return; (4) taking into account all of the facts and circumstances, it would be inequitable to hold the taxpayer liable for the deficiency attributable to such understatement; and (5) the taxpayer elects to have section 6015(b) apply within two years of the initial collection action.

The first element has been stipulated.  Namely, that a joint return was filed for taxable years 2008 and 2009.  Mr. Scott prepared the returns while Mrs. Scott provided the sales and expenses from her businesses; and some of the adjustments

[*12] in the notice of deficiency relate to Mr. Scott's businesses alone. Section 6015(b)(1)(B) provides that the erroneous item must be "attributable" to Mr. Scott. Mrs. Scott maintains that because Mr. Scott prepared the entire return and because he acknowledged making the error that led to the disallowance of the advertising expense deduction claimed in her Schedule C for 2008, the item should be considered attributable to Mr. Scott. We address her position by applying the third element of the statute, "reason to know", which requires us analyze to whom the items of disallowed deductions are attributable.

A.  Reason To Know

The Court of Appeals for the Eleventh Circuit, to which appeal of this case would ordinarily lie, has held that a spouse has reason to know of a substantial understatement if a reasonably prudent taxpayer in her position could be expected to know that the return contained the substantial understatement. See Kistner v. Commissioner, 18 F.3d 1521 (11th Cir. 1994), rev'g T.C. Memo. 1991-463; Stevens v. Commissioner, 872 F.2d 1499 (11th Cir. 1989), aff'g T.C. Memo. 1988-63; see also sec. 7482(b)(1)(E). In Butler v. Commissioner, 114 T.C. 276, 284 (2000), we embraced the four-factor inquiry that has generally been used in deciding the question of whether there is "reason to know" (level of education, involvement in business and financial affairs, routine versus lavish expenditures,

[*13] and deceit by the other spouse). Only the first two factors are applicable here. Therefore, we will consider education and involvement in financial affairs in determining whether Mrs. Scott had a reason to know when she signed the joint return that there were understatements.

1. Education

Mrs. Scott has a degree in accounting from Northern Illinois University's accounting program. From approximately 1977 to 1984 she was in charge of the couple's household finances. She also has business experience managing a sales team for Mary Kay. With her educational background, coupled with her business experience, she was in the position to recognize misstatements in the returns had she chosen to review them. This factor weighs against granting her relief.

2. Involvement in Financial Affairs

Petitioners do not have joint accounts, and Mrs. Scott did not have access to her husband's personal accounts. The household bills, as well as most of the grocery shopping and other expenses, were paid out of Mr. Scott's personal account. Nevertheless, for 2008, $255,467 of the $293,304 total positive adjustments to income related exclusively to items from her businesses reported on her Schedules C. For the taxable year 2009, $33,220 of the $104,040 in total positive adjustments to income related to items from her businesses. Thus, Mrs.

**[*14]** Scott had knowledge of the income and expenses that gave rise to portions of the understatements of tax.

Petitioners argue that it does not necessarily follow that having knowledge of the income itself translates to knowledge of the understatements of tax on the tax returns. However, the more the relief-seeking spouse knows about a transaction, "the more likely it is that she will know or have reason to know that the deduction arising from that transaction may not be valid." Price v. Commissioner, 887 F.2d 959, 963 (9th Cir. 1989). The duty to inquire may arise when the relief-seeking spouse has notice that a particular deduction could result in a substantial understatement of tax. The failure to inquire may result in the constructive knowledge of the understatement.

Mrs. Scott has a responsibility to check the amounts reported for her businesses. She is not relieved of this obligation simply because she is not involved in other financial aspects of the household. Responsibility comes with the benefits of filing jointly. Levin v. Commissioner, T.C. Memo. 1987-67 (holding that a requesting spouse has a duty to inquire about large deductions claimed on her joint return and cannot escape the resulting tax liability by ignoring the return's contents).

[*15] We agree with respondent, who argues that a requesting spouse who does not review a return is nonetheless deemed to have knowledge of the contents of the return. To put it another way, "[f]ailure to review a tax return, standing alone, does not relieve a taxpayer of liability". Schmidt v. United States, 5 Cl. Ct. 24, 27 (1984).

Petitioners cite Price v. Commissioner, 887 F.2d 959, and McClelland v. Commissioner, T.C. Memo. 2005-121, as examples where relief from joint and several liability has been granted when there is no shared bank account and there are no unusual or lavish expenses. Reliance on these cases, however, is misplaced because in each of these cases the requesting spouse's income was not a cause of the tax deficiency. Price involved a requesting spouse whose income was not a point of contention on the tax return. In addition, this spouse had reviewed the tax return and even mentioned to her husband that the deductions on his part were excessive. Price v. Commissioner, 887 F.2d at 961.

Similarly, in McClelland, the requesting spouse had limited involvement with the business from which the improper interest deductions originated. Furthermore, it was the husband who provided all of the business' information to their accountant, and the requesting spouse was never allowed the opportunity to review the tax returns. McClelland v. Commissioner, slip op. at 13. Mrs. Scott,

[*16] however, had a responsibility to review the tax returns, especially items that concerned her businesses, and a review of her Schedule C items would have put her on notice of the substantial overstated expense for 2008 and other errors for 2009.

In conclusion, Mrs. Scott should have had knowledge of income tax owed related to items of her own businesses. We hold that those items were not attributable to Mr. Scott. We must also consider, however, whether she had reason to know about the other adjustments to the returns.

The record establishes that Mrs. Scott did not know about her husband's businesses or about the adjustments made to her husband's business expense deductions. Therefore, we find she did not have reason to know of these items of disallowed expense deductions. Finally, regarding adjustments disallowing deductions claimed on Schedules A, Itemized Deductions, Mrs. Scott has failed to show why she would not have known about these items.

B. Inequity

We now must take into account all the facts and circumstances in deciding whether it is inequitable to hold Mrs. Scott liable for the deficiencies. Sec. 6015(b)(1)(D), (f). The material factors most often cited and considered are whether there has been a significant benefit to the spouse claiming relief and

[*17] whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the other spouse. Alt v. Commissioner, 119 T.C. 306, 314 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004); Jonson v. Commissioner, 118 T.C. 106, 119 (2002), aff'd, 353 F.3d 1181 (10th Cir. 2003). Normal support is not considered a significant benefit.

Petitioners received combined retirement distributions of $469,000 and $338,336 for 2008 and 2009, respectively. On their 2008 and 2009 returns petitioners offset their retirement income with Schedule C losses. As a result, petitioners received a refund of $43,433 for 2008 and a refund of $3,650 for 2009. They owe deficiencies of $93,925 and $36,270 for 2008 and 2009, respectively.

The overstated expenses of Mrs. Scott's businesses played a major role in petitioners' tax liabilities. Denying Mrs. Scott relief regarding these items is not inequitable and would not cause undue economic hardship. We do find as to the adjustments to Mr. Scott's business expense deductions of which she had no reason to know that holding her liable on these facts would be inequitable. She had no personal knowledge of or responsibility for these other items, and she did not enjoy any significant benefit flowing from them. Finally, denying her relief for disallowed itemized deductions causes no undue hardship and therefore, she is

**[*18]** not granted relief because she failed to establish that she had no reason to know about them.

## V. Conclusion

The collection action is sustained for both years. The settlement officer did not abuse her discretion after giving petitioners numerous chances to comply with her requests for supporting documents. In addition, Mrs. Scott is granted relief from joint and several liability only to the extent that the tax deficiencies for 2008 and 2009 were attributable to Mr. Scott's Schedule C items.

In reaching our holding herein, we have considered all arguments the parties made, and to the extent we did not mention them above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.