T.C. Summary Opinion 2010-121


UNITED STATES TAX COURT


WILBERT LEE HAYES, Petitioner, AND
MARLENE HAYES, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11294-08S.              Filed August 23, 2010.


Wilbert Lee Hayes, pro se.

Marlene Hayes, pro se.

Jennifer K. Martwick, for respondent.


GOLDBERG, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent

for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The sole issue for decision is whether petitioner is entitled to relief from joint and several liability for 2004 and 2005.  In a notice of deficiency that the Internal Revenue Service (IRS) mailed to petitioner and intervenor, the IRS determined Federal income tax deficiencies of $1,870.90 and $3,852.75, for 2004 and 2005, respectively, and an addition to tax for 2004 of $100 for late filing under section 6651(a)(1) and denied petitioner's request for relief under section 6015(b), (c), or (f) for 2004 and 2005.  The deficiency in each year resulted from:  (1) The failure by petitioner and intervenor to report interest income from their separate bank accounts; (2) the disallowance of most of the business expense deductions on the couple's joint Schedule C, Profit or Loss From Business; and (3) computational reductions to the earned income credit (EIC) and the additional child tax credit (ACTC) as a result of the first two adjustments.

Petitioner timely petitioned the Court, seeking full relief from joint and several liability for 2004 and 2005 while conceding all of respondent's adjustments for both years.  After the filing of the petition, an IRS administrative review proposed partial relief to petitioner.  Petitioner rejected the offer,

preferring instead to continue to seek full relief through the Court. Intervenor, by not filing a petition, likewise accepted respondent's determination. Intervenor, in accordance with Rule 325(b), intervened opposing any relief to petitioner. Both petitioner and intervenor appeared at trial and testified.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. Petitioner resided in Georgia when he filed the petition.

Petitioner was born and raised in DeKalb County, North Carolina. In 2001 he purchased a house there because it was near his extended family. After about a 1-year courtship, petitioner and intervenor married in May 2003. Petitioner had at least two daughters from a prior relationship who were by then adults. Intervenor had two teenage sons from a prior relationship.

In 2004 and 2005 petitioner, intervenor, and intervenor's two sons lived together in quarters provided by the U.S. Army near Heidelberg, Germany, not far from a military facility where intervenor was stationed. Petitioner had retired from the U.S. Navy at the rank of first class petty officer. He received a taxable pension from the Navy of $14,616 in 2004 and $15,000 in 2005. His Federal income tax withholdings on the pension

distributions were $351.24 or 2.4 percent for 2004 and $379.56 or 2.5 percent for 2005.

During 2004 and 2005 intervenor was an active-duty member of the U.S. Army, serving as a supply logistics sergeant. She earned taxable compensation from the Army of $33,717 in 2004 and $37,035 in 2005. Her Federal income tax withholdings on her Army earnings were $1,227 or 3.6 percent for 2004 and $2,185.05 or 5.9 percent for 2005.

The couple maintained separate bank accounts. For example, petitioner deposited his Navy pension into his separate account, and likewise intervenor deposited her Army salary into her separate account.

Petitioner and intervenor started having marital problems almost immediately after they married. Petitioner enjoyed living frugally and wanted the couple to save money while intervenor was more apt to spend what she earned, for instance taking her family to Italy and London when her mother visited. Intervenor was also responsible for raising her two sons. While living in Germany, petitioner made frequent return visits to North Carolina to be near his remaining family.

One weekend in early 2004, a friend of petitioner who was working in Germany as a disc jockey (DJ) approached the couple asking whether petitioner would serve as his paid assistant and replacement from time to time. Intervenor encouraged petitioner

to accept.  Thus, starting in April 2004, petitioner began serving as a DJ on weekends at nightclubs in Heidelberg on and off the Army base.

When petitioner was using his friend's DJ equipment, petitioner would net only about $35 per night after the equipment rental and other charges.  Because of this, petitioner purchased his own sound equipment and obtained the necessary insurance license in Germany.  Petitioner typically worked one show on most of the weekends when he was in Germany, grossing around $250 to $300 per show.  Intervenor helped petitioner with the DJ activities.  She attended the shows, collected money at the door, and helped "load/unload and pull requested songs."  They continued the DJ business until November 2005.

In November 2005, because of their worsening marital problems and other personal issues, petitioner left Germany and moved back to North Carolina.  In December 2005, acting upon intervenor's relocation request, the Army reassigned intervenor to a military base near El Paso, Texas.  During this time intervenor informed petitioner that she was having financial difficulties.  Petitioner flew to El Paso to assist intervenor and her sons, including using his good credit rating to help her secure a home to rent.  Petitioner and intervenor attempted to

reconcile. At the end of 2005 and for a few months into 2006, petitioner lived in the El Paso home with intervenor and her sons.

Sometime in early 2006, petitioner went to Atlanta to collect a car, furniture, and other belongings that they had shipped from Germany. On April 3, 2006, petitioner emailed to intervenor electronic copies of his 2004 and 2005 Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for his Navy pension income so that intervenor could have their Federal income tax returns prepared. While intervenor was at a cookout, a military friend gave her a business card for an income tax preparer, James Washington of Washington Tax Services in El Paso.[1] The slogan on Mr. Washington's business card said: "Get most, if not all, of it Back".

Petitioner was still out of town when intervenor met with Mr. Washington at his office. Mr. Washington asked intervenor basic opening questions including the filing status of the couple

---

[1]The Court takes judicial notice that James Washington was indicted in the U.S. District Court for the Western District of Texas on Nov. 7, 2007, and pleaded guilty to one count of making a materially false statement that he was a certified public accountant (C.P.A) who was authorized to represent taxpayers before the Internal Revenue Service (IRS), in violation of 18 U.S.C. sec. 1001(a)(3) (2006). See Fed. R. Evid. 201. At the time of trial Mr. Washington was serving a State jail sentence for controlled substances possession. No accuracy-related penalties are at issue in the instant case.

and whether petitioner had any employment in 2004 and 2005. Intervenor told Mr. Washington that petitioner had "DJed" but that she did not have any receipts. Mr. Washington assured intervenor that receipts were not necessary because she and petitioner had lived in Germany when they conducted the DJ activities.

Intervenor called petitioner from Mr. Washington's office. She conveyed the filing status and no need for substantiation information that Mr. Washington had told her. Nonetheless, petitioner still did not want to report any income or expenses from the DJ activity, telling intervenor to report him solely as "Military Retired and not self-employ". Intervenor asked petitioner to talk with Mr. Washington, and they had a brief conversation.

Intervenor concluded that she would "do the right thing" by reporting the income and expenses they incurred in the DJ business. Consequently, "line by line" intervenor and Mr. Washington completed a Schedule C for each year using "guesstimates". They listed petitioner and intervenor as the "proprietors" of the business and they listed the name of the business as "DJ Play Music". For 2004 they reported a loss on the Schedule C of $18,141 consisting of DJ income of $4,800 and DJ expenses of $22,941. For 2005 they reported a Schedule C loss

of $24,910, comprising DJ income of $5,690 and DJ expenses of $30,600.

The Schedule C losses, when combined with the couple's Federal income tax withholding credits, dependency exemption deductions for intervenor's two sons, standard deductions for married filing jointly, EIC, and ACTC, resulted in Federal income tax refund requests of $3,672 for 2004 and $5,846 for 2005. On or about April 15, 2006, intervenor filed both returns without petitioner's review or signature.

Petitioner returned to Texas toward the end of April 2006. In anticipation of the refunds, on or about May 3, 2006, intervenor and petitioner went to intervenor's bank where she added petitioner's name to her account. The IRS sent the 2004 refund check to the couple's El Paso address, and on May 30, 2006, the couple deposited the 2004 refund check into the joint bank account.

Unlike the return for 2004, the 2005 joint Federal income tax return that intervenor had filed was not processed by the IRS. Instead, the IRS returned the 2005 Form 1040, U.S. Individual Income Tax Return, to the couple's El Paso address, requesting that petitioner sign the return. Intervenor gave the return to petitioner to review and sign. He eventually signed the 2005 Form 1040, and intervenor mailed it back to the IRS. The IRS received the jointly signed return on June 5, 2006.

The couple's disagreement over whether to save or spend the refunds were "the last straw" for petitioner. In mid-June 2006 petitioner withdrew $1,000 from the joint bank account and moved back to North Carolina, separating permanently from intervenor. Within a month, petitioner reimbursed intervenor for the withdrawal.

After petitioner left, intervenor received the IRS refund check for 2005 at the couple's El Paso address. She deposited the check into their joint bank account on July 20, 2006. Petitioner withdrew $991 on August 3, 2006. Petitioner watched the account over the Internet as intervenor withdrew the remainder of the funds. One year later, in August 2007, the couple divorced.

However, the divorce did not end the couple's money disputes because the IRS selected their 2004 and 2005 joint Federal income tax returns for examination. The examination led to the following proposed adjustments.

With respect to 2004, the examiner determined that petitioner and intervenor failed to report $146 and $68, respectively, in taxable interest income from their separate bank accounts. Much more significantly, the examiner disallowed $10,036 of the Schedule C expense deductions for 2004, adjusting the DJ business bottom line from a loss of $18,141 to a loss of $8,105. These adjustments resulted in computational reductions

to the EIC and the ACTC, leading to a deficiency for 2004 of $1,870.90, together with a $100 addition to tax for late filing under section 6651(a)(1).

Similarly for 2005, the examiner determined that petitioner and intervenor failed to report $206 and $12, respectively, in taxable interest income. In addition, the determination disallowed $23,967 of the business expense deductions for 2005, causing an adjustment in the Schedule C reporting from a net loss of $24,910 to a net loss of $943. These adjustments resulted in computational adjustments to the EIC and the ACTC, culminating in a deficiency for 2005 of $3,852.75.

At this point, intervenor suggested to petitioner that she would take responsibility for the aggregate deficiencies for both years if he would repay her the funds he had withdrawn from their joint bank account in the summer of 2006. Intervenor prepared a Form 9465, Installment Agreement Request, listing petitioner's name and her name, and proposing a payment plan of $400 per month.

Petitioner declined to sign the installment agreement. Instead, petitioner provided the examining agent a completed Form 8857, Request for Innocent Spouse Relief, dated April 26, 2007, requesting that the IRS grant him full relief from all the Federal income tax liabilities for 2004 and 2005. On the accompanying Form 12510, Questionnaire for Requesting Spouse,

petitioner wrote that "I had no involvement in preparation of tax" and "My wife control and spend most of the money and I was not living in Texas when this happen." Petitioner checked a box on the form stating that he did not "review the tax return(s) before signing."

Intervenor provided the examining agent with a multipage response to petitioner's request for relief. In main part, intervenor asserted:

> Mr. Washington (tax-preparer) spoke with my husband on the phone at the time I was getting the papers prepared. My husband was very aware that we wanted to file self employment. Initially, my husband told me to file Military Retirement but I told him that Mr. Washington informed me that receipts were not required since we were filing from overseas.

Intervenor also pointed out that:

> The entire [2005 Federal income tax return] packet was returned, my husband had every opportunity to review and sign the packet. I did not rush him so I'm not convinced that he did not review it before he signed it. He didn't ask any questions about how we filed because he was aware of it.

The examiner determined that petitioner was not entitled to innocent spouse relief but did not issue a formal determination letter.

A preliminary version of the divorce decree listed intervenor and petitioner as responsible equally for their outstanding Federal income tax liabilities; but because of petitioner's strong views regarding not having knowledge of the DJ expense deductions and not receiving a benefit from the

refunds, the final divorce decree dated August 2007 did not address unpaid taxes.

As previously stated, the IRS issued a notice of deficiency dated February 6, 2008, to petitioner and intervenor. The notice adopted without change the examiner's proposed adjustments, the resulting deficiencies, and the denial of innocent spouse relief to petitioner.

Petitioner filed the current petition, and in response, respondent sent petitioner's request for innocent spouse relief to the IRS Cincinnati Centralized Innocent Spouse Operations Unit (CCISCO). CCISCO contacted intervenor, who provided documentation and her version of the events. CCISCO recommended partial relief for petitioner under section 6015(c) for 2004 and 2005.

In respondent's pretrial memorandum, respondent's counsel agreed with the CCISCO recommendation. In particular, respondent concluded that petitioner did not have actual knowledge of, and is therefore entitled to relief under section 6015(c) from, intervenor's unreported interest income for 2004 and 2005 and from one-half of the disallowed business expense deductions for 2004 and 2005, which corresponds to intervenor's share of the disallowed DJ business expense deductions. Respondent also concluded that petitioner is entitled to relief from one-half of

the computational adjustments to the EIC and the ACTC resulting from the two adjustments.

## Discussion

### I.  Burden of Proof

Except as otherwise provided in section 6015, the requesting spouse generally bears the burden of proof with respect to relief from joint and several liability.  See Rule 142(a); <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004); <u>Stergios v. Commissioner</u>, T.C. Memo. 2009-15; <u>McClelland v. Commissioner</u>, T.C. Memo. 2005-121 (and cases cited therein).  However, in an instance as here where the Commissioner has proposed to give partial relief but the intervenor has intervened to oppose the relief, the Court may decide the matter according to the preponderance of the evidence.  See <u>Stergios v. Commissioner</u>, <u>supra</u>.

### II.  Joint and Several Liability

When taxpayers file a joint return, they compute the tax on their aggregate income and liability for the resulting tax is joint and several.  Sec. 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C. 276, 282 (2000); sec. 1.6013-4(b), Income Tax Regs. However, the Code provides three possible avenues of relief through section 6015(b), (c), and (f) from joint and several liability.  <u>Stergios v. Commissioner</u>, <u>supra</u>.  All three are subject to certain separate threshold requirements.  In main

part, section 6015(b) may provide relief if at the time of signing the return the requesting spouse "did not know, and had no reason to know, that there was such understatement". Sec. 6015(b)(1)(C). Section 6015(c) may provide relief if at the time of signing the return, the requesting spouse did not have "actual knowledge" of the items that gave rise to the deficiency. Sec. 6015(c)(3)(C). Section 6015(f) may provide equitable relief after "taking into account all the facts and circumstances" if relief is not available under section 6015(b) or (c). Sec. 6015(f)(1) and (2). We now apply these three relief provisions to the present facts.

III.  Section 6015(b)

Section 6015(b)(1) has five conjunctive requirements for relief to a requesting spouse. Thus, if the requesting spouse fails to meet any one of the five requirements, he/she does not qualify for relief. Alt v. Commissioner, supra at 313. Petitioner immediately satisfies two of them: The couple filed joint returns for 2004 and 2005,[2] and petitioner requested relief before the IRS began collection activity.

For context, we note that at all stages of the administrative review respondent denied relief to petitioner

_____

[2]Petitioner did not sign the 2004 joint tax return, but he does not claim this omission as a defense. We will assume that intervenor filed the 2004 joint return with petitioner's consent. See Hennen v. Commissioner, 35 T.C. 747, 748 (1961); Moran v. Commissioner, T.C. Memo. 2005-66.

under section 6015(b) because one or more of the three other requirements was not met. Next we describe the three requirements.

A. Attribution--Section 6015(b)(1)(B)

The understatement of tax must be "attributable to erroneous items of 1 individual filing the joint return". Sec. 6015(b)(1)(B). That one individual must be the nonrequesting spouse. Juell v. Commissioner, T.C. Memo. 2007-219.

B. Reason To Know--Section 6015(b)(1)(C)

The requesting spouse must have had no knowledge and "no reason to know" of the items giving rise to the understatement. Sec. 6015(b)(1)(C). A requesting spouse has constructive knowledge or a reason to know of an understatement if "a reasonably prudent taxpayer under the circumstances of the [requesting] spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted." Kistner v. Commissioner, 18 F.3d 1521, 1525 (11th Cir. 1994),[3] revg. T.C. Memo. 1991-463; Juell v. Commissioner, supra; see also sec. 1.6015-2(c), Income Tax Regs.

Even if the requesting spouse is not aware of sufficient facts to give him reason to know of the understatement, he may

_____

[3]If the decision in this case were appealable, which it is not because of sec. 7463(b), the appeal would lie in the U.S. Court of Appeals for the Eleventh Circuit.

know enough facts to put him on notice that an understatement exists.  Juell v. Commissioner, supra.  In other words, a taxpayer who files a joint return with his spouse may not turn a blind eye to the return and thereby avoid the duty to inquire. McCoy v. Commissioner, 57 T.C. 732, 734 (1972).  Under this duty, the decisive question is whether "'a reasonably prudent taxpayer in [his, the requesting spouse's] position [would] be led to question the legitimacy of the deduction.'"  Juell v. Commissioner, supra (quoting Guth v. Commissioner, 897 F.2d 441, 445 (9th Cir. 1990), affg. T.C. Memo. 1987-522).

    C.   Inequity--Section 6015(b)(1)(D)

The inequity requirement tests whether "taking into account all the facts and circumstances" it would be "inequitable" to hold the requesting spouse liable for the understatement.  Sec. 6015(b)(1)(D).  The analysis is similar to the equity analysis of section 6015(f).  Juell v. Commissioner, supra.  The two most common factors are whether the requesting spouse received a significant benefit and whether the nonrequesting spouse caused the understatement through concealment, overreaching, or other wrongdoing.  Smith v. Commissioner, T.C. Memo. 2009-237.  We now apply the law of section 6015(b) to the present facts and circumstances.

D.  Omitted Interest Income

Because of the attribution requirement of section 6015(b)(1)(B), petitioner is eligible for relief only from intervenor's omitted interest income, not from his own.  The amount of intervenor's unreported interest income was $68 for 2004 and $12 for 2005.

Intervenor and petitioner maintained separate bank accounts during these 2 years.  Intervenor filed the 2004 Federal income tax return without petitioner's review.  Even though petitioner signed the 2005 Federal income tax return before filing, a $12 omission is not highly noticeable.  Moreover, although petitioner was aware that intervenor had at least one separate bank account, intervenor does not claim and the record does not indicate that petitioner knew or had reason to know that intervenor earned interest.  In fact, petitioner perceived intervenor as a spendthrift, and may have thought that she maintained solely a non-interest-bearing checking account.

With respect to section 6015(b)(1)(D), we conclude that it would not be inequitable to grant relief to petitioner with respect to the omitted interest income for 2004 and 2005.  Petitioner's share of the tax refunds that the omitted interest of $68 and $12 generated for 2004 and 2005, respectively, are far too small to find that petitioner received a significant benefit from their exclusion.

For the above reasons, we conclude that petitioner did not know or have reason to know of intervenor's omitted interest income for 2004 and 2005 and that he is entitled to relief under section 6015(b) for intervenor's omitted interest income for 2004 and 2005 and for the related computational impacts on EIC and ACTC.

E.   Disallowed DJ Business Expense Deductions

Petitioner's active participation in the DJ activity gave him firsthand knowledge that the business generated income and expenses.  Further, the reporting of the DJ business was foremost in his mind because he explicitly told intervenor during the tax preparation telephone conversation that he did not want her to report the DJ income or expenses.  These factors clearly put petitioner on notice and gave him a duty to inquire.  We conclude that a reasonably prudent person in petitioner's circumstances would have followed up with his wife or with the tax preparer, asking whether they reported the DJ activity, and if so, the amount of income and expenses that the couple claimed and whether they owed a balance or had a refund due.  The conclusion for 2005 is even clearer because petitioner had the 2005 Federal income tax return in his possession with plenty of time for review before he signed it.  We find that by not making these inquiries petitioner cast "a blind eye" toward the disallowed DJ business expense deductions for 2004 and 2005.

Additionally, both petitioner and intervenor were active in the DJ business. Petitioner served as the DJ while intervenor attended the shows, helped collect cash at the door, and pulled music selections. On her own initiative, intervenor reported that she and petitioner were coproprietors of the business. Thus, because the DJ business was not attributable solely to intervenor, the attribution requirement of section 6015(b)(1)(B) independently precludes relief to petitioner under section 6015(b).

For the above reasons, we sustain respondent's determination denying any relief to petitioner under section 6015(b) with respect to the disallowed DJ business expense deductions.

IV. Section 6015(c)

A. Preliminary Requirements Under Section 6015(c)

Under section 6015(c) the requesting spouse who filed a joint return for the year(s) in issue elects to be treated as if he had filed a separate return, thereby limiting his tax liability to that portion of the deficiency properly allocable to him. Rowe v. Commissioner, T.C. Memo. 2001-325. To be eligible for relief under section 6015(c) the electing spouse must satisfy two pertinent preliminary conditions as of the time of the election. First, he must no longer be married to, must be legally separated from, or must have lived for the entirety of the preceding 12-month period in a different household from the

individual with whom he filed the joint return.  Sec. 6015(c)(3)(A).  Secondly, he must have made the election after the deficiency was asserted but no later than 2 years after the date on which the collection activity began.  Sec. 6015(c)(3)(B).

Petitioner satisfies these two initial conditions.  Although petitioner submitted the Form 8857 to the IRS before the State court finalized his divorce in August 2007, in the present circumstance the Court does not look to the date of the Form 8857.  We are redetermining whether petitioner is entitled to relief from joint liability with respect to the determined deficiencies and thus look to the date of petitioner's petition.  See Stergios v. Commissioner, T.C. Memo. 2009-15; see also Vetrano v. Commissioner, 116 T.C. 272, 283 (2001).  Thus, as of May 12, 2008, the date on which petitioner filed the petition, he was no longer married to intervenor.  Likewise, the IRS had not commenced collection activity before the petition was filed.  Consequently, petitioner's election was timely.  Accordingly, he has satisfied the two pertinent threshold requirements of section 6015(c).

B.  Allocation of Deficiency

For purposes of section 6015(c), section 6015(d) allocates the items that gave rise to a deficiency on a joint return to each spouse as though they had filed separate returns, and the requesting spouse is liable only for his proportionate share of

the deficiency that results from such allocation.  Sec. 6015(d)(1), (3)(A).  Thus, section 6015(c) permits an individual to elect to limit the liability to the portion of the deficiency that is properly allocable to the electing individual under section 6015(d).  Estate of Capehart v. Commissioner, 125 T.C. 211, 214 (2005); Barnes v. Commissioner, T.C. Memo. 2004-266; sec. 1.6015-3(a), Income Tax Regs.  In other words, petitioner may be entitled to relief from intervenor's share of the deficiencies, but not from his own share.

Applying these principles to the present situation, respondent determined that under section 6015(c), one-half of the disallowed DJ business expense deductions for 2004 and 2005 is attributable to intervenor.  We agree.  As noted, intervenor was active in the business and she independently reported that petitioner and she were coproprietors.  Thus, we will analyze petitioner's request for full relief under section 6015(c) solely as applicable to intervenor's one-half share of the disallowed DJ business expense deductions, but not for petitioner's one-half share.

C.  Knowledge Standard Under Section 6015(c)

Congress sought to make relief easier to achieve through section 6015(c) than section 6015(b) by requiring a higher level of knowledge under section 6015(c) before denying relief.  King v. Commissioner, 116 T.C. 198, 204 (2001).  Specifically, the

requesting spouse must not have had "actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual". Sec. 6015(c)(3)(C). The Court and the regulations interpret this statutory language as requiring that the requesting spouse not have "actual knowledge of the factual circumstances which made the item unallowable as a deduction." King v. Commissioner, supra at 204; sec. 1.6015-3(c)(2)(i)(B)(1), Income Tax Regs. The Court has further defined actual knowledge as "an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof)." Cheshire v. Commissioner, 115 T.C. 183, 195 (2000), affd. 282 F.3d 326 (5th Cir. 2002).

D. Disallowed 2004 DJ Business Expense Deductions

We begin by noting that the CCISCO administrative review recommended relief under section 6015(c) from intervenor's one-half share of the 2004 disallowed DJ business expenses and respondent's pretrial memorandum concurred with that recommendation.

The decisive factor here is that intervenor filed the 2004 Federal income tax return without petitioner's review or signature. Despite intervenor's nearly 2 years of opposition, documentation, and testimony regarding petitioner's claim for relief under section 6015, she never indicated that she discussed

with petitioner the final "guesstimates" for the 2004 DJ business expenses deductions or the 2004 refund request before she filed their 2004 joint Federal income tax return. Therefore, we find that petitioner did not have an actual and clear awareness of the overstated DJ business expense deductions for 2004. Accordingly, we agree with respondent that petitioner is entitled to relief from joint and several liability under section 6015(c) from the portion of the deficiency related to intervenor's half of the 2004 disallowed DJ business expense deductions and from the associated computational adjustments to EIC and ACTC.

E.  Disallowed 2005 DJ Business Expense Deductions

CCISCO and respondent likewise concluded petitioner is entitled to relief under section 6015(c) from intervenor's one-half share of the disallowed DJ business expense deductions for 2005.

The IRS returned the unprocessed 2005 Federal income tax return to the couple's El Paso address, requesting petitioner's signature. Intervenor gave the unprocessed 2005 Federal income tax return to petitioner to sign, and he had plenty of time to review the return before he signed it.

Petitioner signed the 2005 Form 1040 on page 2, in the signature block "Under penalties of perjury", only a short distance from the line that showed a large refund of $5,846, slightly more than 15 times his own personal withholding credit

for 2005 of $379.56.  Further, the 2005 Form 1040 on page 1 reported only two other items of income:  Intervenor's Army income of $37,035 and petitioner's Navy pension $15,000. Sandwiched between these two figures, in the middle of the numbers column, was the reported loss of $24,910 from the DJ business, surrounded by handwritten brackets clearing indicating a negative number.  Similarly, the Schedule C, which reported the details of the DJ business loss, immediately followed the page where petitioner signed the return.  Consequently, petitioner's claim that he did not have actual knowledge of the factual circumstances giving rise to the 2005 business loss is untenable, especially since he had previously told intervenor not to report the DJ activity.

Moreover, petitioner was also keenly aware of the pending 2005 refund.  The couple had already set up a joint bank account to receive the refund, they had already deposited the 2004 refund check, and they had each drawn separately from the 2004 refund proceeds before petitioner had signed the 2005 return.

For all of these reasons, we find that at the time petitioner signed the 2005 return, he had an actual and clear awareness of the large loss from the DJ business that gave rise to almost all of the understatement for 2005.  Accordingly, we hold that petitioner is not entitled to any relief from joint and

several liability under section 6015(c) from the 2005 disallowed business expense deductions.

V.  Section 6015(f) Equitable Relief

In overview, because petitioner is not entitled to full relief under section 6015(b) or (c), he may be eligible for relief under section 6015(f).  In broadest terms, section 6015(f) provides equitable relief if, after taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the unpaid tax or any portion thereof.  Butler v. Commissioner, 114 T.C. at 292.  We begin by noting that the IRS examiner, the notice of deficiency, and respondent in his pretrial memorandum determined that petitioner is not entitled to equitable relief under section 6015(f).

A.  Analysis of Section 6015(f)

The Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, for determining equitable relief. Except for certain exceptions inapplicable here, Rev. Proc. 2003-61, sec. 4.01(7), 2003-2 C.B. at 297, limits equitable relief to only those items which are attributable to the nonrequesting spouse.  Therefore, petitioner is not eligible for equitable relief from his own share of the omitted interest income or from his share of the disallowed DJ business expense deductions. Consequently, because we allowed partial relief for petitioner under section 6015(c), we review section 6015(f) solely with

respect to whether petitioner is entitled to equitable relief from intervenor's share of the disallowed 2005 DJ business expense deductions.

The Commissioner's guidelines set forth three tiers of requirements. Summarizing the first two tiers, we note that where, as here, the requesting spouse has satisfied the first set of requirements found in Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298, but fails to meet the conditions set forth in Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298 (here, petitioner failed to establish economic hardship as discussed in more detail below), the requesting spouse may nevertheless obtain relief under a nonexclusive list of factors that Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299, provides. No single factor is determinative, and the Court will consider all relevant factors whether or not enumerated in that section. We now apply the equity factors to the facts in this case.

### 1.  Marital Status

The marital status factor is satisfied because petitioner and intervenor were divorced before petitioner filed his petition requesting relief.

### 2.  Economic Hardship

Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), states that the definition of economic hardship relies on rules that the Secretary set forth in section 301.6343-1(b)(4), Proced. & Admin.

Regs.  The regulation defines economic hardship as the condition where a taxpayer is "unable to pay his or her reasonable basic living expenses."  Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.  In determining a reasonable amount of basic living expense, the Commissioner considers information such as:  (1) The taxpayer's age, employment status, history, and ability to earn; (2) the amount reasonably necessary for living expenses such as food, clothing, housing, medical expenses, insurances, current tax payments, and child support; (3) the cost of living in the geographic area in which the taxpayer resides; and (4) any extraordinary circumstances such as a medical catastrophe.  Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

On the Form 12510 which petitioner submitted as part of his administrative application for innocent spouse relief, petitioner reported that his monthly income of $1,200 exceeded his monthly expenses of $1,068.  Further, petitioner did not claim that he will be unable to pay his reasonable basic living expenses if relief is not granted.  Accordingly, petitioner has not established financial hardship.  This factor weighs against relief.

### 3.  Knowledge or Reason To Know

We have already concluded that petitioner failed to establish that when he signed the 2005 Federal income tax return, he did not know or have reason to know of the disallowed 2005 DJ

business expense deductions for 2005.  This factor weighs against relief.

### 4.  Nonrequesting Spouse's Legal Obligation

The legal obligation factor is pertinent only when the nonrequesting spouse has a legal duty to pay the outstanding income tax liability pursuant to a divorce decree or agreement. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv).  This factor is inapplicable here because the final divorce decree did not assign responsibility for paying the outstanding taxes.

### 5.  Significant Benefit

This factor concerns whether the requesting spouse received significant benefit beyond normal support as a result of the unpaid tax liability or refund.  Id. sec. 4.03(2)(a)(v), 2003-2 C.B. at 299.  Petitioner received nearly $2,000 from the refunds, though he reimbursed intervenor for $1,000.  This factor is neutral or weighs against relief.

### 6.  Compliance With Federal Tax Laws

Another factor is whether the requesting spouse made a good-faith effort to comply with the Federal income tax laws in the succeeding years.  Id. sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299. The record is devoid of information in this regard.

7. Other Factors

With respect to the other factors that Rev. Proc. 2003-61, sec. 4.03, provides, abuse and poor mental or physical health of the requesting spouse, neither of those factors is present here.

B. Conclusion With Respect to Section 6015(f)

Weighing the above factors, we sustain respondent's determination that equity does not call for relief for petitioner. Other than being divorced, no factor weighs in favor of relief, and all the other factors are inapplicable, neutral, or weigh against relief. Therefore, we hold that petitioner is not entitled to equitable relief under section 6015(f) for any portion of the disallowed 2005 DJ business expense deductions and the related computational adjustments to EIC and ACTC.

## Conclusion

The Court has considered all of the arguments that petitioner and intervenor have made, and, to the extent not mentioned, the Court concludes that the arguments are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.