T.C. Memo. 2014-190

UNITED STATES TAX COURT

VIRGIL V. WORK, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2214-11.                           Filed September 17, 2014.

Harry Charles, for petitioner.

Steven A. Haller and Steven W. LaBounty, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge: Petitioner brings this case before the Court in dispute of a

final determination denying his request for relief from joint and several liability

under section 6015(b), (c), and (f).[1]

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[*2]**   The only issue is whether petitioner is entitled to relief from joint and several liability under section 6015(b), (c), or (f) for understatements of tax for the 2006 and 2007 tax years.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Missouri at the time the petition was timely filed.

I.   Background

Petitioner and Katherine Work were married in 1998 and are currently married and living together. Petitioner and Mrs. Work have three minor children.

Petitioner graduated from Missouri University of Science and Technology with a bachelor's degree in engineering management. He later earned a master's degree in business administration in operations and systems. Petitioner did not pursue studies in economics, finance, or accounting[2] in his formal education.

---

[1](...continued)
Revenue Code of 1986, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioner took one accounting course but did not pursue an accounting degree or certification.

[*3] During 2006 and 2007 petitioner was employed as a sales and consulting systems engineer for International Business Machine Corp. (IBM) but is now retired.

During the 2006 and 2007 tax years, Mrs. Work, under the name K.V. Enterprises, sold real estate, managed a rental property, and provided automated teller machines (ATMs). In addition, Mrs. Work was a salesperson for a company that marketed prepaid bank cards to teenagers.

Petitioner and Mrs. Work maintained individual checking accounts and a joint checking account. Petitioner used his individual account to deposit his wages and to pay household expenses such as the mortgage, utilities, property insurance, property taxes, car payments, and food. Petitioner did not write checks from the joint checking account. However, Mrs. Work used the joint checking account, and income tax refunds were deposited into that account. Mrs. Work also maintained a business account for K.V. Enterprises. Petitioner never used the business account, but he had and continues to have signatory authority.

Petitioner and Mrs. Work timely filed joint income tax returns for tax years 2006 and 2007. Since they began filing electronically, petitioner and Mrs. Work developed a specific procedure for preparing their joint income tax return. Each year petitioner initiated the return electronically. He entered his wages from his

[*4] Form W-2, Wage and Tax Statement, along with amounts they had received for interest and dividends, gain or loss from securities, and itemized deductions such as mortgage interest on their personal residence. After petitioner completed what he considered to be his portion of the return, Mrs. Work would enter her information and then submit the completed return. Petitioner did not attempt to review the completed return before Mrs. Work finalized and submitted each return.

Once the return was filed, Mrs. Work would print a copy of the return and give it to petitioner. Again, petitioner did not review the printed return before placing the copy of the return in a file for recordkeeping. After the return was submitted, Mrs. Work would inform petitioner of whether there was an amount owed or a refund of tax. Any amount owed to the Internal Revenue Service (IRS) would be paid by petitioner from his individual bank account. However, if the Works received a refund, it was deposited into the joint bank account.

II. Nature of Mrs. Work's Businesses and K.V. Enterprises

K.V. Enterprises sells real estate and markets ATMs.[3] K.V. Enterprises was capitalized with proceeds from a loan made jointly to petitioner and Mrs.

---

[3]On Schedules C, Profit or Loss From Business, Mrs. Work described K.V. Enterprises' principal business as "provider of ATMs" and real estate sales. The nature of the ATM portion of the business is not clear from the record.

[*5] Work. Petitioner did not work for or manage K.V. Enterprises. Mrs. Work incorporated K.V. Enterprises, Inc., in the State of Missouri in 2002. In 2005, 2006, and 2007 petitioner owned 50% of K.V. Enterprises' stock and Mrs. Work owned the remaining 50% of the outstanding shares. In addition, petitioner is listed on the 2006 and 2007 annual reports as its vice president[4] although he had no meaningful employment with K.V. Enterprises and did not involve himself with Mrs. Work's business operations.

Additionally, in 2005 Mrs. Work inherited her mother's residence in St. Louis, Missouri. Mrs. Work leased this property during 2006 and 2007, which produced monthly rental income that renters paid to K.V. Enterprises. In March 2007 this property was transferred by quitclaim deed to Mrs. Work and petitioner, and they jointly refinanced the mortgage.

Mrs. Work hired an accounting firm to prepare the corporate income tax returns for K.V. Enterprises. For tax years 2006 and 2007 K.V. Enterprises timely filed Forms 1120S, U.S. Income Tax Return for an S Corporation. For tax year 2006 K.V. Enterprises' Form 1120S reported gross receipts of $36,490 and claimed deductions of $69,328, yielding $32,838 in losses. For tax year 2007

[4]All of the annual reports were filed and signed by Mrs. Work as president. Mrs. Work is also the registered agent for the corporation.

[*6] Form 1120S reported gross receipts of $49,176 and claimed deductions of $73,115, yielding $23,939 in losses. The accounting firm prepared the Schedules K-1, Shareholder's Share of Income, Deductions, Credits, etc., reflecting each shareholder's percentage of losses. The information reflected on these Schedules K-1 should have been reported on the Works' personal Forms 1040, U.S. Individual Income Tax Return, on part II of their Schedules E, Supplemental Income and Loss, reflecting the flowthrough nature of an S corporation.

When the Works filed their Forms 1040 for tax years 2006 and 2007, Mrs. Work did not include any of the shareholder information in regard to the loss deductions that K.V. Enterprises claimed. Instead, Mrs. Work duplicated all of the income and deductions either on her Schedules C or on the Schedules E on part I in regard to rental real estate. In addition to the substantial deductions claimed on her corporate return, she claimed on their individual returns several large additional deductions, such as car and truck expenses and interest expenses. For 2006 the Works claimed deductions for a $49,832 business loss and a $6,419 rental real estate loss. For 2007 the Works claimed deductions for a $82,504 business loss, a $20,916 rental real estate loss, and a $30,038 net operating loss; those totals are all reflected on the front page of their Form 1040. Additionally, for 2006 the Works failed to calculate their total tax (lines 58-63 were left blank

**[\*7]** on their Form 1040); they merely claimed a refund of their withholding less the amount they calculated as their child tax credit, which yielded a $31,161 refund.  For 2007 the Works did not calculate either their total income or their total tax (lines 43-63 were left blank on their Form 1040); they merely claimed a refund of 100% of their withholdings, which yielded a refund of $22,527.  Prior to tax years 2006 and 2007 refunds were around $10,000.

III.    Notice of Deficiency and Prior Tax Court Case

On March 13, 2009, respondent issued a joint notice of deficiency to petitioner and Mrs. Work for tax years 2006 and 2007.  Respondent saw that K.V. Enterprises' purported income and deductions appeared to be duplicated and reported on the Forms 1040, Schedules C and Schedules E, and the tax returns for the S corporation and that petitioner and Mrs. Work did not report any of the information on income or losses from the Schedules K-1 on their Schedule E for either of the tax years at issue.  Respondent disregarded the Forms 1120S because the amounts reported on the Schedules K-1 attached to the Forms 1120S were not reflected on the Works' Forms 1040.  Thus, respondent made adjustments to the Works' personal returns for tax years 2006 and 2007 that were based solely on errors determined with respect to the attached Schedules C and Schedules E.

[*8]    Petitioner and Mrs. Work timely filed a petition with the Court under docket No. 14559-09 in response to the notice of deficiency.  The case did not proceed to trial, and the parties settled the case at docket No. 14559-09 by stipulated decision entered by the Court on March 9, 2010.  In the stipulated decision petitioner and Mrs. Work conceded in full the deficiencies in income tax determined in the notice of deficiency, and respondent conceded the section 6662(a) accuracy-related penalties for tax years 2006 and 2007.  The consequences of the deficiency case are fully described in the decision document at docket No. 14559-09; but for the purposes of this case, the Court will note that the deficiencies were premised on the facts that petitioner and Mrs. Work: (1) could not fully substantiate most of the Schedule C expenses for 2006 and 2007,[5] (2) could not fully substantiate most of the Schedule E expenses for 2006 and 2007,[6] (3) failed to report additional income of $2,234 from State tax refunds received in 2006, (4) failed to report Mrs. Work's unemployment compensation of

_____

[5]For tax years 2006 and 2007 respondent disallowed Schedule C expenses totaling $69,716 and $119,229, respectively.

[6]For tax years 2006 and 2007 respondent disallowed Schedule E expenses totaling $1,835 and $5,900, respectively.

**[*9]** $2,800 received in 2007,[7] (5) failed to report additional rental income of $2,600 received in 2007, and (6) erroneously deducted their mortgage interest of $5,209 twice (on Schedule A, Itemized Deductions, and on Schedule E) for 2006.[8] Consequently, respondent determined deficiencies in income tax of $21,528 and $45,438 for 2006 and 2007, respectively.

IV.    Petitioner's Present Case

On May 20, 2010, respondent received petitioner's Form 8857, Request for Innocent Spouse Relief, seeking relief for tax years 2006 and 2007.  Also on May 20, 2010, respondent received Mrs. Work's Form 12508, Questionnaire for Non-Requesting Spouse.[9]  In Form 12508 Mrs. Work stated that all errors were attributable to her and that she did not wish her husband to be held jointly liable

---

[7]Ironically, upon further review of the Turbo Tax attachments the $2,800 of unemployment compensation was reported, but in the calculation it was netted against net operating loss (NOL) carryforwards generated from the disallowed portion of business use of the home as "other income" and it reduced the NOL from -$32,838 to -$30,038 and was reported on line 21, instead of on line 19 as unemployment compensation.  Why Mrs. Work was receiving unemployment compensation was unclear from the record.

[8]Because of these adjustments the alternative minimum tax and self-employment tax were recalculated, resulting in an increase to tax.  Additionally, an NOL carryforward was disallowed for 2007, resulting in increased taxable income of $30,038 for 2007.  The adjustments also resulted in a reduction of the child tax credit to $300 for 2006 and complete disallowance of the child tax credit for 2007.

[9]Mrs. Work did not intervene and did not testify in this case.

**[*10]** for her mistakes. On December 30, 2010, respondent issued a final determination denying petitioner's request for relief.

OPINION

Petitioner claims that he is entitled to relief under section 6015 from the tax liabilities reflected on the final determination for tax years 2006 and 2007. Except as otherwise provided in section 6015, the spouse requesting relief generally bears the burden of proof. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004). The Court has jurisdiction to review respondent's denial of petitioner's request for relief under section 6015. See sec. 6015(e)(1).

Section 6013(d)(3) provides that taxpayers filing joint Federal income tax returns are jointly and severally liable for the taxes due. However, section 6015 may provide relief from joint and several liability under certain conditions. Generally, a requesting spouse may obtain relief when he or she did not have actual or constructive knowledge of the understatement of tax on a return, sec. 6015(b); or, if no longer married to the nonrequesting spouse, the requesting spouse may limit liability to his or her allocable portion of any deficiency, sec. 6015(c); or, if ineligible for relief under subsection (b) or (c), the requesting

[*11] spouse may obtain relief when, in view of all the facts and circumstances, it would be inequitable to hold the requesting spouse liable, sec. 6015(f).

I.    Relief Under Section 6015(b)

Under section 6015(b)(1)(A)-(E), a requesting spouse seeking relief from joint and several liability must satisfy each of the following requirements:  (A) a joint return was filed for the taxable year; (B) there is an understatement of tax attributable to an erroneous item of the nonrequesting spouse; (C) the requesting spouse establishes that in signing the return he or she did not know, and had no reason to know, of the understatement; (D) it is inequitable to hold the requesting spouse liable for the deficiency attributable to the understatement; and (E) the requesting spouse timely elects the benefits of section 6015(b).  A requesting spouse must satisfy all five requirements to qualify for relief.  See Alt v. Commissioner, 119 T.C. at 313.

The foregoing requirements of section 6015(b)(1) are stated in the conjunctive.  Accordingly, a failure to meet any one of them prevents a requesting spouse from qualifying for section 6015(b) relief.  See Alt v. Commissioner, 119 T.C. at 313.  Respondent does not dispute that petitioner filed joint income tax returns with Mrs. Work for 2006 and 2007.  Further, respondent does not dispute that petitioner timely filed a request for relief.  However, respondent argues that

**[*12]** petitioner has not satisfied the requirements set forth in subparagraph (B), (C), or (D) of section 6015(b)(1). Therefore, petitioner bears the burden of showing that: there is an understatement of tax attributable to an erroneous item of Mrs. Work; in signing the return he did not know, and had no reason to know, of the understatement; and it is inequitable to hold him liable for the deficiency attributable to the understatement. See Alt v. Commissioner, 119 T.C. at 313.

A. Section 6015(b)(1)(B)

In accordance with section 6015(b)(1)(B), petitioner must show that the erroneous items giving rise to the understatement of tax are attributable solely to Mrs. Work. Generally, an erroneous item is attributed to the individual whose activities gave rise to the item. Sec. 1.6015-1(f)(1), Income Tax Regs. To determine who is responsible for the erroneous items, the Court may also look to the spouse who wrongfully reported or claimed the item (with certain exceptions not applicable here). See Dillon v. Commissioner, T.C. Memo. 1998-5; Estate of Killian v. Commissioner, T.C. Memo. 1987-365.

The facts in the record demonstrate that all of the deductions and income omissions for 2006 and 2007 are attributable solely to Mrs. Work. The only exception is in regard to the 2006 State tax refund and the duplicated mortgage interest deduction, which are attributed to both petitioner and Mrs. Work.

**[\*13]** Petitioner completed his "portion" of each of the returns and gave them to Mrs. Work. At this point, Mrs. Work input the remaining information, including erroneous deductions, and incorrectly reported her unemployment compensation and additional rental income. The incorrect information later gave rise to the deficiencies.

In addition, Mrs. Work conceded in Form 12508 that she made the mistakes on the 2006 and 2007 tax returns. On Form 12508 Mrs. Work stated that petitioner was not involved with--and did not operate--the business from which Mrs. Work derived the erroneous tax expense deductions and unreported rental income, even though he was a 50% owner of K.V. Enterprises.

Joint ownership, by itself, is not determinative of whether the erroneous item is attributable to one or both spouses. Rowe v. Commissioner, T.C. Memo. 2001-325; Buchine v. Commissioner, T.C. Memo. 1992-36, aff'd, 20 F.3d 173 (5th Cir. 1994). A key factor is whether and to what extent the requesting spouse voluntarily participated in the investment that gave rise to the erroneous item.

Generally, a requesting spouse who voluntarily agrees to enter into an investment and who actively participates in it is precluded from attributing the entire investment to the nonrequesting spouse. See Abelein v. Commissioner, T.C. Memo. 2004-274; Capehart v. Commissioner, T.C. Memo. 2004-268, aff'd,

**[\*14]** 204 Fed. Appx. 618 (9th Cir. 2006).  However, if the requesting spouse is not an active participant, the requesting spouse may qualify for relief even though named as a shareholder or partner.  Juell v. Commissioner, T.C. Memo. 2007-219.

Accordingly, petitioner satisfies the section 6015(b)(1)(B) requirement that the erroneous items claimed on the 2006 return, but for the State tax refund and the duplicated mortgage interest, and the erroneous items claimed on the 2007 return are attributable to Mrs. Work.

B.  Section 6015(b)(1)(C)

Under section 6015(b)(1)(C), a requesting spouse must show that he or she did not know and had no reason to know that there was an understatement of tax at the time he or she signed the return.  Factors to consider in analyzing whether the requesting spouse had "reason to know" of the understatement include:  (1) the requesting spouse's level of education; (2) the requesting spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the nonrequesting spouse's evasiveness and deceit concerning the couple's finances.  Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989); Mora v. Commissioner, 117 T.C. 279, 287 (2001).  The Court of Appeals for the Eighth Circuit, to which this case is

**[\*15]** appealable absent a stipulation to the contrary, has adopted the Price

analysis.  See Erdahl v. Commissioner, 930 F.2d 585, 589 (8th Cir. 1991)

(discussing whether taxpayer knew or had reason to know that the deduction

would give rise to a substantial understatement), rev'g T.C. Memo. 1990-101.

Moreover, a taxpayer has reason to know of an understatement if he has a

duty to inquire and fails to satisfy that duty.  Price v. Commissioner, 887 F.2d at

965.  A requesting spouse has a duty to inquire when he "know[s] enough facts to

put * * * [him] on notice that such an understatement exists."  Id.  We may impute

the requisite knowledge to the requesting spouse unless he satisfies his duty of

inquiry.  Porter v. Commissioner, 132 T.C. 203, 211-212 (2009).

Petitioner is a college graduate with a master's degree in business

administration. Although he did not pursue a degree in accounting, economics, or

finance, he is highly educated.  This factor weighs against granting relief for both

the 2006 and 2007 tax years.

Petitioner lived with Mrs. Work during the 2006 and 2007 tax years.

Petitioner was involved with, and largely in control of, most of the household

expenses; he made the mortgage, utilities, property tax, and car payments from his

individual account.  Petitioner contends that he did not have a way to verify Mrs.

Work's business finances.  On the contrary, he had access to the couple's joint

[*16] checking account and K.V. Enterprises' business account, despite the fact that he chose not to actively monitor the accounts. He could have verified the nature of Mrs. Work's income and expenses reported on the joint return by accessing the account statements. Further, petitioner claims that he was unable to verify Mrs. Work's finances or verify her receipts because he did not have access to her password-protected computer. Even if petitioner did not have access to Mrs. Work's computer, Mrs. Work provided copies of supporting documents and receipts to him with the final printed tax returns. This factor also weighs against granting relief.

It is unclear whether petitioner and Mrs. Work had a substantial unexplained change in the family's standard of living, although the Form 1120S reflected over $40,000 in credit card debt for the years at issue. Neither respondent or petitioner offered evidence as to this factor, and it is therefore a neutral factor for the 2006 and 2007 tax years.

Although petitioner suggested at trial that Mrs. Work's actions were fraudulent, no evidence was presented showing Mrs. Work was deceptive or evasive toward him about either her personal and business finances or the final returns for 2006 and 2007. Petitioner had access to K.V. Enterprises' business account and could have easily verified the nature of income and expenses listed on

[*17] their joint returns. Mrs. Work gave petitioner a printed copy of each joint return upon completion, including supporting receipts. Petitioner had ample time and opportunity to review the joint returns but elected not to. Petitioner cannot avoid liability by actively electing to be uninformed about the contents of his Federal tax returns, especially when he had physical possession of the returns at issue. Petitioner testified that Mrs. Work had "a temper". This statement is vague and not necessarily indicative of deception or evasiveness. Ultimately, this factor weighs against granting relief.

A requesting spouse also has a reason to know of an understatement if he has a duty to inquire and fails to satisfy that duty. The requesting spouse has a duty to inquire when he knows enough facts to put him on notice that such an understatement exists. See Price v. Commissioner, 887 F.2d at 965-966; Levin v. Commissioner, T.C. Memo. 1987-67; see also Erdahl v. Commissioner, 930 F.2d 585. Such notice is provided if the requesting spouse knows sufficient facts such that a reasonably prudent taxpayer in his position would question the legitimacy of the deductions. Price v. Commissioner, 887 F.2d at 965; see also Erdahl v. Commissioner, 930 F.2d 585. In such a scenario, a duty to inquire arises which, if not satisfied by the requesting spouse, will result in constructive knowledge of the

**[\*18]** understatement.  Price v. Commissioner, 887 F.2d at 965; see also Erdahl v.

Commissioner, 930 F.2d 585.

Petitioner had enough knowledge of the facts underlying the deductions for

both 2006 and 2007 to cause a reasonably prudent taxpayer in his position to

question their legitimacy.  Although petitioner and Mrs. Work had received tax

refunds for prior years, the refunds for 2006 and 2007 were significantly larger

than those for prior years.  The large expense deductions resulted in reported

overpayments of 92% and 100% of petitioner's withholding credits for 2006 and

2007, respectively.  Refunds for 2006 and 2007 were $31,161 and $22,527,

respectively, compared with prior years' refunds of around $10,000.  A simple

comparison indicates that the Works claimed refunds for the years in issue that

were more than double their previous refunds, a fact which is certainly enough to

put a reasonable taxpayer on notice to ask questions about the size of their

refunds.  A taxpayer who files a joint return with his spouse may not turn a blind

eye to the joint return and thereby avoid the duty to inquire.  Price v.

Commissioner, 887 F.2d at 965 (citing Levin v. Commissioner, T.C. Memo. 1987-

67).  Petitioner cannot avoid liability by choosing not to acknowledge the refund.

Although petitioner contends that he thought the large refunds for tax years

2006 and 2007 were normal because K.V. Enterprises was a "start up" venture,

[*19] these large refunds should have put him on notice that there could be a substantial overstatement of deductions, especially since the 2007 refund was more than double the 2005 refund, and the 2006 refund was more than triple the 2005 refund.  When respondent's counsel showed petitioner copies of the Schedules C from the 2006 and the 2007 joint returns, he admitted that the deductions claimed were "shockingly large" and that a reasonable person would question such large expense deductions.  Petitioner did not act as a reasonably prudent taxpayer would have, and he is not relieved from his responsibility to properly inquire about the contents of a joint return.  The Court finds that petitioner had reason to know of the understatement of tax that resulted from the deductions claimed and the unreported rental income for the 2006 and 2007 tax years.  Accordingly, this factor weighs against granting relief.

The facts indicate that petitioner should have known or had reason to know of the understatements of tax from erroneous deductions and income omissions for the 2006 and 2007 tax years.  Accordingly, petitioner does not satisfy section 6015(b)(1)(C) with respect to the erroneous income and expenses reported for the 2006 and 2007 tax years.

Under section 6015(b)(1)(A)-(E), a requesting spouse seeking relief from joint and several liability must satisfy all of the requirements.  As the requirements

**[*20]** of section 6015(b)(1) are stated in the conjunctive, a failure to meet any one of them prevents a requesting spouse from qualifying for section 6015(b) relief. Petitioner has satisfied some, but not all, of the five requirements of section 6015(b): He has failed to prove that he satisfies section 6015(b)(1)(C). Accordingly, he does not qualify for relief under section 6015(b). See Alt v. Commissioner, 119 T.C. at 314.

II.     Relief Under Section 6015(c)

Under section 6015(c), a divorced or separated spouse may elect to limit liability for a deficiency on a joint return to the portion allocable to him or her. A requesting spouse can make a valid election only if: (1) the requesting spouse is no longer married to, is not part of the same household as, or is legally separated from, his or her spouse; (2) the requesting spouse makes a timely election; and (3) the Secretary does not demonstrate that the requesting spouse had actual knowledge at the time the requesting spouse signed the return of an item giving rise to a deficiency. Sec. 6015(c)(3).

Petitioner is not eligible to make the election because he and Mrs. Work are still married and are currently living together in the same household. Accordingly, petitioner does not meet the first requirement to make a valid section 6015(c)

**[*21]** election and cannot receive relief under section 6015 (c).  See sec. 6015(c)(3)(A)(i).

III.   Relief Under Section 6015(f)

Section 6015(f) grants the Commissioner discretion to relieve an individual from joint liability, where relief is not available under section 6015(b) or (c), if taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency.  The Commissioner recently prescribed revised guidelines in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296, that are considered in determining whether it is inequitable to hold a requesting spouse liable for all or part of the liability for any unpaid tax or deficiency.[10]  Although the Court consults these guidelines when reviewing the Commissioner's denial of relief, see Washington v. Commissioner, 120 T.C. 137, 147-152 (2003), we are not bound by them inasmuch as our analysis and determination ultimately turn on an evaluation of all the facts and circumstances, see Pullins v. Commissioner, 136

---

[10]Rev. Proc. 2013-34, sec. 7, 2013-43 I.R.B. 397, 403, provides that the guidelines are effective for requests for relief filed on or after September 16, 2013, and requests for equitable relief pending on September 16, 2013, whether before the IRS, the Office of Appeals, or a Federal court.

**[\*22]** T.C. 432, 438-439 (2011); <u>Porter v. Commissioner</u>, 132 T.C. 203 at 210;

<u>Hudgins v. Commissioner</u>, T.C. Memo. 2012-260, at \*39-\*40.

A.  <u>Threshold Conditions for Granting Relief</u>

The revenue procedure begins by establishing threshold requirements that must be satisfied before an equitable relief request pursuant to 6015(f) may be considered.  <u>See</u> Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400.  Those conditions are:  (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse.  <u>Id.</u>

Respondent concedes that petitioner meets threshold conditions 1 through 6 but asserts that petitioner has not met the final threshold condition.  Respondent concedes that petitioner has satisfied the attribution threshold condition for the items attributed solely to Mrs. Work and her portion of the joint items and is

[*23] eligible to be considered for equitable relief under section 6015(f) for those portions of the deficiencies. However, respondent asserts that petitioner has failed to satisfy the attribution threshold conditions for those items solely attributed to him and his portion of the joint items allocated to him.

The Court disagrees with respondent's position. Petitioner does meet the final threshold for attribution because (as discussed above) the erroneous items claimed on the 2006 return, but for the State tax refund and the duplicated mortgage interest, and the erroneous items claimed on the 2007 tax return are attributable to Mrs. Work. See supra pp. 12-14. Therefore, petitioner satisfies all of the seven threshold conditions except for the portion of the 2006 State tax refund and the duplicated mortgage interest attributed to him.

B. Streamlined Determination Granting Relief

When the threshold conditions have been met, as they are here, Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, sets forth elements that a requesting spouse must satisfy to qualify for a streamlined determination by the Commissioner granting relief under section 6015(f). Those conditions are: (1) the requesting spouse is no longer married to, is legally separated from, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date the IRS makes its determination;

**[*24]** (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) in an understatement or deficiency case such as this, the requesting spouse had no knowledge or reason to know that there was an understatement or deficiency on the joint income tax return. Id.

Petitioner is still married to and currently living with Mrs. Work, and thus he does not qualify for a streamlined determination.

C. Factors Used To Determine Whether Relief Will Be Granted

Where, as here, a requesting spouse meets the threshold conditions but fails to qualify for relief under the revenue procedure for a streamlined determination, a requesting spouse may still be eligible for equitable relief if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the underpayment. See id. The revenue procedure lists the following nonexclusive factors that the Commissioner takes into account when determining whether to grant equitable relief: (1) marital status; (2) economic hardship; (3) in the case of an understatement or deficiency, whether the requesting spouse knew or had reason to know of the item giving rise to the understatement or deficiency as of the date the joint return was filed or reasonably believed by the requesting spouse to have been filed; (4) legal obligation;

**[\*25]** (5) significant benefit; (6) compliance with tax laws; and (7) mental or physical health. Id.

In making our determination under section 6015(f), the Court considers these factors as well as any other relevant factors. No single factor is determinative, and all factors shall be considered and weighed appropriately. Haigh v. Commissioner, T.C. Memo. 2009-140.

### 1. Marital Status

If the requesting spouse is no longer married to the nonrequesting spouse, this factor will weigh in favor of granting relief. See Rev. Proc. 2013-34, sec. 4.03(2). For purposes of this section a requesting spouse will be treated as being "no longer married to the non-requesting spouse" if the requesting spouse is divorced from the nonrequesting spouse. Id. sec. 4.03(2)(a)(i). If the requesting spouse is still married to the nonrequesting spouse, this factor is neutral. Id. Petitioner is still married to and is currently living with Mrs. Work. Thus, this factor is neutral.

### 2. Economic Hardship

Generally, economic hardship exists when collection of the tax liability will render the requesting spouse unable to meet basic living expenses. Id. sec. 4.03(2)(b), 2013-43 I.R.B. at 401. If denying relief from joint and several liability

[*26] will not cause the requesting spouse to suffer economic hardship, this factor may be neutral. Id. A requesting spouse's current income, expenses, and assets are considered to determine whether economic hardship will result. Sec. 301.6343-1(b)(4), Proced. & Admin. Regs. Petitioner is retired with a monthly income of $10,045, including rental income, and expenses of $8,455. In addition, as of March 2007 he is the joint owner of rental real estate Mrs. Work inherited in 2005. On the basis of the record, petitioner has not proven that he will suffer economic hardship if the Court denies him relief. This factor is neutral.

### 3. Knowledge or Reason To Know

Knowledge exists when the requesting spouse knew or had reason to know of the item giving rise to the understatement or deficiency as of the date the joint return (including a joint amended return) was filed, or the date the requesting spouse reasonably believed the joint return was filed. Id. sec. 4.03(2)(c)(ii). If the requesting spouse did not know and had no reason to know of the item giving rise to the understatement, this factor will weigh in favor of relief. Id. If the requesting spouse knew or had reason to know of the item giving rise to the understatement, this factor will weigh against relief. Id.

As previously discussed, petitioner knew or had reason to know of the understatements of joint income tax for 2006 and 2007. See supra pp. 14-20. A

[*27] requesting spouse is considered to be on notice that there may be an understatement of tax liability when there is a substantial reduction in tax liability. Jonson v. Commissioner, 118 T.C. 106 (2002), aff'd, 353 F.3d 1181 (10th Cir. 2003). Further, a taxpayer has a duty to inquire with respect to large deductions and cannot escape responsibility by simply ignoring the contents of the return. See, e.g., Estate of Jackson v. Commissioner, 72 T.C. 356 (1979); McCoy v. Commissioner, 57 T.C. 732 (1972); Levin v. Commissioner, T.C. Memo. 1987-67. Petitioner admitted that the refunds for the 2006 and 2007 tax years were significantly larger than the refunds for prior years. Again, petitioner cannot be relieved of liability simply because he chose to ignore the refunds and the unreported income. This factor weighs against granting relief.

### 4. Legal Obligation

For purposes of this factor, a legal obligation is an obligation arising from a divorce decree or other legally binding agreement. Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402. There is no agreement between petitioner and Mrs. Work that obligates her to be solely liable for the joint income tax understatements for 2006 and 2007. This factor is neutral.

**[*28]**      5. <u>Significant Benefit</u>

This factor considers whether the requesting spouse received a significant benefit, beyond normal support, from the unpaid income tax liability. <u>Id.</u> sec. 4.03(2)(e). Normal support is measured by the circumstances of the particular party. <u>Porter v. Commissioner</u>, 132 T.C. at 212. This factor will weigh in favor of granting relief if the nonrequesting spouse significantly benefited from the unpaid tax or understatement and the requesting spouse had little or no benefit or the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment. Rev. Proc. 2013-34, sec. 4.03(2)(e).

Petitioner testified that the proceeds from the refund were deposited into the joint checking account, an account he had access to but did not use. Despite the fact that petitioner had access to the refunds of $31,161 in 2006 and $22,527 in 2007, it is unclear from the evidence whether he benefited directly from the understatements. Petitioner also credibly testified that he does not know what Mrs. Work did with the proceeds. There is no evidence to suggest that petitioner benefited other than indirectly from the understatements, but these large refunds were deposited into a joint checking account to which he had legal access. The stipulated decision in the case at docket No. 14559-09 reflected $21,528 in additional tax liability for tax year 2006, the year for which the Works received a

**[*29]** $31,161 refund (92% of their withholdings). Additionally, the decision reflected $45,438 in additional tax liability for tax year 2007, the year for which the Works received a $22,527 refund (100% of their withholdings). Therefore, this factor weighs against granting relief.

### 6. Compliance With Income Tax Laws

This factor considers whether the requesting spouse has made a good-faith effort to comply with the Federal income tax laws in years after the years for which relief is requested. Id. sec. 4.03(2)(f). If the requesting spouse remains married to the nonrequesting spouse, whether legally separated or living apart, and continues to file joint returns with the nonrequesting spouse after requesting relief, then this factor will be neutral if the joint returns are in compliance with the tax laws but will weigh against granting relief if the returns are not in compliance. Id. sec. 4.03(2)(f)(ii). The parties agree that petitioner has filed all required tax returns and is otherwise in compliance with Federal income tax laws for the taxable years after 2007. Thus, this factor is neutral.

### 7. Mental or Physical Health

This factor considers whether the requesting spouse was in poor physical or mental health. This factor will weigh in favor of granting relief if the requesting spouse was in poor mental or physical health at the time the returns to which the

[*30] request for relief relates were filed (at the time the requesting spouse reasonably believed the return or returns were filed) or at the time the requesting spouse requested relief.  Id. sec. 4.03(2)(g), 2013-43 I.R.B. at 403.

The IRS will consider the nature, extent, and duration of the condition, including the ongoing economic impact of the illness.  Id.  If the requesting spouse was in neither poor physical nor poor mental health, this factor is neutral.  Id. Petitioner testified that no emotional or physical spousal abuse occurred during their marriage.  Additionally, petitioner concedes that he was not in poor mental or physical health at the time the returns for tax years 2006 and 2007 were signed. Thus, this factor is neutral.

### D.  Conclusion of Section 6015(f) Relief

Weighing all the facts and circumstances, we are not persuaded that it would be inequitable to deny petitioner relief under section 6015(f).  As the preceding discussion shows, five of the factors are neutral and two weigh against granting petitioner relief.  Accordingly, petitioner is not entitled to relief from joint and several liability under section 6015(f) for the 2006 and 2007 tax years.

**[*31]** IV.    <u>Conclusion</u>

Petitioner is not entitled to relief from joint and several liability for the 2006 and 2007 tax years under section 6015(b), (c), or (f).  Petitioner is jointly and severally liable for deficiencies for tax years 2006 and 2007.

The Court has considered all of the arguments made by the parties and, to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.