T.C. Summary Opinion 2016-44

UNITED STATES TAX COURT

CYNTHIA A. BULLOCK, Petitioner, AND BRIAN BULLOCK, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29221-13S.                          Filed August 17, 2016.

Cynthia A. Bullock, pro se.

Brian Bullock, pro se.

Richard Charles Grosenick, Mark J. Miller, and Ellen French (student), for
respondent.

SUMMARY OPINION

ASHFORD, Judge: This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other Court, and this opinion shall not be treated as precedent for any other case.  Petitioner seeks review under section 6015(e)(1) of respondent's determination that she is not entitled to relief from joint and several liability for the 2009 taxable year with respect to a proposed income tax liability of $4,205 arising from unreported taxable wages, interest, and cancellation of debt.

We hold that she is not entitled to relief from joint and several liability under section 6015(b), (c), or (f).

## Background

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioner, Cynthia A. Bullock, resided in Wisconsin and intervenor, Brian Bullock, petitioner's former spouse, resided in Florida at the time the petition was filed with the Court.

Petitioner and intervenor married in 1992 and they remained married in 2009.  From January 2009 to August 2009, petitioner and intervenor, together with

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

their two minor daughters, were living in Florida. During that time petitioner was employed at a Macy's Department Store in Clearwater, Florida, and intervenor was self-employed, working as a "D.J." and videographer. In August 2009 the family moved to Wisconsin when petitioner received a job transfer to a Macy's Department Store in Wisconsin, where she had relatives. Intervenor did not have employment in Wisconsin and was forced to return to Florida, while continuing to try to find employment in Wisconsin so that he could eventually rejoin the family. During 2009 petitioner's job at Macy's was the main source of income for the family.

During the marriage intervenor managed the family's finances, including paying the bills and filing the tax returns. To that end, with respect to the 2009 joint Federal income tax return (joint return), in early 2010, when petitioner received in Wisconsin two Forms W-2, Wage and Tax Statement, she simply mailed them to intervenor without reviewing them. As a result, she did not confirm whether these two Forms W-2 reflected all of her wages and taxes withheld from her employment with Macy's in Wisconsin, as well as in Florida, for 2009, or whether she was missing any Forms W-2 for 2009. According to petitioner, she reminded intervenor several times that she was going to have "Florida and Wisconsin W-2s" for 2009. The two Forms W-2 petitioner mailed to

intervenor, and no other, were used to report petitioner's wage income on the joint return, which was prepared by the same accountant intervenor had hired to prepare the joint Federal income tax returns for all the years that petitioner and intervenor were together.

Once the joint return was prepared, intervenor mailed it to petitioner in Wisconsin for her signature. Although she could have, petitioner did not review the joint return for correctness; rather, she simply signed it in the appropriate places, which intervenor had marked with flags. Thus, petitioner did not check whether the joint return reflected all of her wages and tax withheld from her employment with Macy's in 2009 (whether in Wisconsin or Florida), or whether any other reportable income items may have been missing from the joint return. After signing the return, she mailed it back to intervenor to file.

The joint return reflected a tax refund; and when the refund check, which was made out to petitioner and intervenor, was received by intervenor in Florida, he mailed it to petitioner to endorse and return to him so that he could cash it. She did so. Around this same time petitioner decided that she wanted a divorce because the marriage was irrevocably broken and it had been so for several years. Upon cashing the refund check, intervenor sent petitioner half of the proceeds minus the cost of filing for divorce.

On December 27, 2010, respondent sent to petitioner and intervenor at their Florida address a notice proposing an income tax increase against them of $4,493 for the 2009 taxable year. The basis for the proposed increase was that certain income and payment information reported by third parties to respondent differed from the amounts shown on the joint return. The notice listed the following discrepancies, relating to tax withheld, interest, taxable wages and cancellation of debt:

| Item No. | Issue | Received from | Account information | Amount reported to respondent by others | Amount included on the joint return |
|---|---|---|---|---|---|
| 1 | Tax withheld | Macy's, Inc. | Form W-2 | $138 | --- |
| 2 | Tax withheld | Macy's, Inc. | Form W-2 | 122 | --- |
| 3 | Tax withheld | Macy's, Inc. | Form W-2 | 509 | --- |
| | Tax withheld total | | | 769 | $260 |
| 4 | Interest | Wachovia Bank, N.A. | Form 1099-INT | 25 | -0- |
| | Interest total | | | 25 | -0- |
| 5 | Taxable wages | Macy's, Inc. | Form W-2 | 13,258 | -0- |
| | Taxable wages total | | | 13,258 | -0- |
| 6 | Cancellation of debt | Bank of America, N.A. | Form 1099-C | 3,677 | --- |

| 7 | Cancellation of debt | Bank of America, N.A. | Form 1099-C | 1,444 | --- |
|---|---|---|---|---|---|
| | Cancellation of debt total | | | 5,121 | -0- |

The evidentiary record is silent as to whether petitioner or intervenor responded to the notice.

Petitioner and intervenor divorced on August 16, 2011. At trial petitioner testified that she had no knowledge that she and intervenor had underreported their income on the joint return until November 2011, when she first received a letter from respondent to that effect. Petitioner also testified that upon receiving the letter, she contacted Macy's and was told that a third Form W-2 for 2009 was issued to her at her Florida address reflecting wages and tax withheld from her employment with Macy's in Clearwater, Florida. According to petitioner, she did not receive this Form W-2, nor did intervenor ever mention it or forward it to her. At trial petitioner described intervenor as controlling, but never physically abusive, and uncooperative during the divorce proceedings.

Petitioner further acknowledged that with intervenor's not working for extended periods, she relied on a Bank of America credit card solely in her name to pay the family's living expenses, such as groceries, and that in 2009, because

the outstanding amount of debt on the credit card was insurmountable, she worked out a settlement with Bank of America resulting in a cancellation of the debt. Petitioner provided no testimony regarding receipt of the Form 1099-C, Cancellation of Debt, issued by Bank of America reporting $5,121 of cancellation of debt or why this amount was not reported on the joint return. Petitioner also acknowledged having a bank account with Wachovia Bank; but she provided no documentation to establish that the account was a joint account, and she similarly provided no testimony regarding receipt of the Form 1099-INT, Interest Income, issued by Wachovia Bank reporting $25 of interest or why this amount was not reported on the joint return.

On September 13 and November 1, 2012, intervenor and petitioner respectively filed Forms 8857, Request for Innocent Spouse Relief. At some point before March 12, 2013, respondent determined that intervenor was entitled to full relief and that petitioner was not entitled to either full or partial relief. Petitioner submitted to respondent a Statement of Disagreement, dated March 25, 2013, appealing the determination against her. On October 1, 2013, respondent's Office of Appeals issued a final notice of determination to petitioner denying relief from joint and several liability.

On December 16, 2013, petitioner timely filed a petition with this Court seeking review of respondent's determination. Pursuant to section 6015(e)(4) and Rule 325, intervenor filed a timely notice opposing petitioner's request for relief.

## Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). If a joint return is made, the tax is computed on the spouses' aggregate income, and each spouse is fully responsible for the accuracy of the return and is jointly and severally liable for the entire amount of tax shown on the return or found to be owing. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). Nevertheless, under certain circumstances, a spouse who has made a joint return may seek relief from joint and several liability under procedures set forth in section 6015. Sec. 6015(a). Section 6015 provides a spouse with three alternatives: (1) full or partial relief under subsection (b), (2) proportionate relief under subsection (c), and (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f).

In this case, respondent evaluated petitioner's entitlement to relief from joint and several liability under each alternative, and we have jurisdiction to do the same. See sec. 6015(e)(1). In doing so, we apply a de novo standard of review, as well as a de novo scope of review. Porter v. Commissioner, 132 T.C. 203, 210

(2009). Petitioner bears the burden of proving that she is entitled to relief under section 6015. See Rule 142(a); Porter v. Commissioner, 132 T.C. at 210; Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004); Stergios v. Commissioner, T.C. Memo. 2009-15.

A.     Relief Under Section 6015(b)

In order to be entitled to relief under section 6015(b), the spouse who requests that relief (requesting spouse) must satisfy the following conditions: (1) a joint return has been made for a taxable year; (2) on such return there is an understatement of tax attributable to erroneous items of the nonrequesting spouse; (3) the requesting spouse did not know and had no reason to know of the understatement at the time the return was signed; (4) taking into account all facts and circumstances, it is inequitable to hold the requesting spouse liable for that year's deficiency in tax attributable to such understatement; and (5) the requesting spouse timely elects relief under section 6015(b). Sec. 6015(b)(1). These conditions are stated in the conjunctive, and thus a failure to meet any one of them precludes the requesting spouse from being entitled to relief under section 6015(b). Alt v. Commissioner, 119 T.C. at 311; McClelland v. Commissioner, T.C. Memo. 2005-121, slip op. at 9. In this case, petitioner filed a joint Federal

income tax return for 2009 and timely filed a request for relief, but on the basis of the existing record she plainly cannot satisfy the second condition.

The second condition under section 6015(b) requires the requesting spouse to show that the understatement of tax is attributable to erroneous items of the other spouse. Sec. 6015(b)(1)(B). An "erroneous item" is "any item resulting in an understatement or deficiency in tax to the extent that such item is omitted from, or improperly reported (including improperly characterized) on an individual income tax return." Sec. 1.6015-1(h)(4), Income Tax Regs. Furthermore, an erroneous item is generally attributed to the individual whose activities gave rise to the item. See id. para. (f)(1).; see also Agudelo v. Commissioner, T.C. Memo. 2015-124, at *14; Work v. Commissioner, T.C. Memo. 2014-190, at *12; sec. 1.6015-3(d)(2)(iii), Income Tax Regs.

Here, there were three erroneous items: the unreported wage income from Macy's in Clearwater, Florida, interest income from a Wachovia bank account, and cancellation of debt from settling an outstanding credit card debt with Bank of America. The facts in the record demonstrate that these erroneous items are attributable solely to petitioner. Indeed, petitioner's position in this regard has never wavered; at trial, she reiterated that all of the Macy's wage income was hers and acknowledged that the Bank of America credit card and the Wachovia bank

account were in her name, thereby making the cancellation of debt and the interest income attributable to her.

Because petitioner has failed to satisfy the second condition under section 6015(b), we need not decide whether she satisfied the other two conditions under section 6015(b), i.e., whether she lacked the requisite knowledge of the understatement at the time she signed the joint return and whether equity considerations favor her. Accordingly, petitioner is not entitled to relief under section 6015(b).

B.     Relief Under Section 6015(c)

Subject to other conditions, section 6015(c) allows a divorced or separated spouse to elect to limit his or her liability for a deficiency assessed with respect to a joint return to the portion of such deficiency allocable to him or her under subsection (d). Pursuant to section 6015(d)(3)(A), "any item giving rise to a deficiency on a joint return shall be allocated to individuals filing the return in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year." Further, "[e]rroneous items of income are allocated to the spouse who was the source of the income." Sec. 1.6015-3(d)(2), Income Tax Regs; see also Agudelo v. Commissioner, at *16.

In this case, while petitioner and intervenor have been divorced since August 16, 2011, petitioner was the source of the erroneous items that led to the deficiency, and thus these items would be allocable to petitioner if she and intervenor had filed separate returns at the time. As a result, section 6015(c) affords her no relief.

C.    Relief Under Section 6015(f)

Where relief is not available under section 6015(b) or (c), section 6015(f) grants respondent the discretion to relieve a requesting spouse of joint liability if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the unpaid tax or deficiency or any portion thereof. Additionally, section 6015(f) authorizes granting such equitable relief "[u]nder procedures prescribed by the Secretary". For requests filed on or after September 16, 2013, and for requests pending in any Federal court on or after September 16, 2013, Rev. Proc. 2013-34, 2013-43 I.R.B. 397, prescribes the guidelines that respondent will consider in determining whether equitable relief is appropriate. Although we are not bound by them, since this case was filed and pending after September 16, 2013, we will analyze petitioner's request under these guidelines to ascertain whether she satisfies the requirements for relief under section 6015(f).

See Agudelo v. Commissioner, at \*17-\*18; Work v. Commissioner, T.C. Memo. 2014-190, at \*22.

The revenue procedure begins by establishing threshold conditions that a requesting spouse must satisfy to be eligible for equitable relief. The threshold conditions are: (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent tax return; and (7) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse. Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400. These conditions, like the conditions under section 6015(b), are stated in the conjunctive; thus, a requesting spouse must satisfy all seven of them before relief may be granted. Agudelo v. Commissioner, at \*18.

Petitioner meets the first six threshold conditions, but does not satisfy the seventh condition. Generally, the income tax liability from which the requesting spouse seeks relief must be attributable, either in full or in part, to an item of the

nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income, unless a specified exception applies. See Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. at 399-400. If the liability is partially attributable to the requesting spouse, then relief can be considered only for the portion of the liability attributable to the nonrequesting spouse. Id. As explained supra, the entire liability at issue here is attributable to petitioner, not intervenor. And while there are certain enumerated exceptions to the seventh threshold condition,[2] on the basis of the existing record none are applicable here. Accordingly, petitioner is not entitled to relief under section 6015(f).

## Conclusion

Petitioner is not entitled to relief under section 6015(b), (c), or (f) for 2009. Relief under section 6015 hinges on attributing the income tax liability, which in this case, as petitioner admits, is entirely attributable to her. Petitioner cannot be granted relief under section 6015 just because she did not review the joint return and her income was used to support intervenor and their children in 2009.

---

[2]The exceptions are: (1) attribution solely due to the operation of community property law, (2) nominal ownership, (3) misappropriation of funds, (4) abuse, and (5) fraud committed by the nonrequesting spouse. Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. 397, 399-400.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.